**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 15a0519n.06

No. 14-3646

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 22, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALVARO LOPEZ-SALGADO, | ) | |
| | ) | |
| **Petitioner,** | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| v. | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| LORETTA LYNCH, Attorney General, | ) | |
| | ) | |
| **Respondent.** | ) | **OPINION** |
| | ) | |

**BEFORE: BOGGS and MOORE, Circuit Judges, and REEVES, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** Alvaro Lopez-Salgado, a Mexican citizen, entered the United States without authorization in the early 2000s. He was served with a Notice to Appear in October 2010. During a hearing before an Immigration Judge ("IJ"), Lopez-Salgado conceded removability, declined to designate a country for removal, and requested as relief withholding of removal or, in the alternative, voluntary departure. The IJ granted Lopez-Salgado's request for time to prepare and file an application for withholding of removal.

After reviewing Lopez-Salgado's application, the IJ issued an oral decision finding that Lopez-Salgado had "lied about the essence of his claim" and was not credible. The IJ denied Lopez-Salgado withholding of removal and voluntary departure. The Board of Immigration

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 14-3646
*Lopez-Salgado v. Lynch*

Appeals ("BIA") affirmed this decision on appeal. For the reasons discussed below, we **DENY** Lopez-Salgado's petition for review.

## I. BACKGROUND

Alvaro Lopez-Salgado entered the United States in the early 2000s. C.A.R. at 170 (IJ Hr'g Tr. at 29). Since that time, he has been living in Detroit, Michigan. *Id.* at 126 (IJ Dec. at 10). His parents and three sisters also live in Detroit; none have legal status. *Id.* at 178–79 (IJ Hr'g Tr. at 37–38). He has legal custody of his two daughters; their mother is a United States citizen, but she and Lopez-Salgado never married and are no longer together. *Id.* at 181–82 (IJ Hr'g Tr. at 40–41). Lopez-Salgado was served with a Notice to Appear on October 11, 2010. *Id.* at 118 (IJ Dec. at 2). Lopez-Salgado conceded removability, declined to designate a country for removal, and requested as relief withholding of removal or, in the alternative, voluntary departure. *Id.* at 160 (IJ Hr'g Tr. at 20). The IJ granted Lopez-Salgado 90 days to prepare and file his withholding application, and scheduled a merits hearing for September 24, 2012.

At this hearing, Lopez-Salgado testified that he had been threatened twice, in 1999 and 2001, by a man named Edgar, who was a member of a wealthy Chiapas family. *Id.* at 172–75 (IJ Hr'g Tr. at 31–34). Edgar accused Lopez-Salgado of sexually harassing one of Lopez-Salgado's family members. Lopez-Salgado stated in his application that he was accused of harassing one family member. During his hearing, Lopez-Salgado initially stated that he had been accused of harassing his aunt, but later changed his story and stated that he was accused of harassing his female cousin as well. *Id.* at 172, 215 (IJ Hr'g Tr. at 31, 74). Lopez-Salgado stated that he and

Edgar had fought, but that he did not contact the police because of the influence of Edgar's family in Chiapas. *Id.* at 174–76 (IJ Hr'g Tr. at 33–35). Lopez-Salgado told his father about the threats from Edgar, and his father advised him to come to the United States. *Id.* at 177–78 (IJ Hr'g Tr. at 36–37).

Lopez-Salgado then testified that, once he was in the United States, he was threatened in 2009 by a man from Chiapas, Rigoberto, who Lopez-Salgado believed had ties to Edgar's family. *Id.* at 182–85; 202 (IJ Hr'g Tr. at 41–44, 61). Rigoberto was deported back to Mexico prior to 2012, and Lopez-Salgado testified that he was afraid of Rigoberto if he were also to be deported back to Mexico. *Id.* at 187 (IJ Hr'g Tr. at 46).

Lopez-Salgado is the father of two daughters, who were born in the United States in 2005 and 2006. He did not marry their mother, Yesenia Perez, a United States citizen, although they lived together for about four years. *Id.* at 179–80 (IJ Hr'g Tr. at 38–39). Lopez-Salgado testified that Perez was a threatening person and that she abused drugs; at the time of the hearing, Lopez-Salgado had sole physical custody of his daughters. *Id.* at 181 (IJ Hr'g Tr. at 40). He testified to the IJ that, if removed, he would bring his daughters to Mexico with him, and that he was worried about their wellbeing in Mexico. *Id.* at 189–91 (IJ Hr'g Tr. at 48–50). He requested withholding of removal based on his membership in the particular social group of "Mexican citizens, returning to Mexico with their U.S. citizen children, who have spent the recent years in the United States and are considered foreigners in Mexico." *Id.* at 228 (Exh. 4). In the

alternative, he requested voluntary departure. In April 2013, after the hearing, Lopez-Salgado was awarded sole legal custody. *Id.* at 27 (Mot. to Remand Exh. A. at 1).

The IJ denied Lopez-Salgado's request for voluntary departure and for withholding of removal. The IJ found that Lopez-Salgado was not credible, and that he had lied about key portions of his claim in an attempt to qualify for withholding of removal. *Id.* at 120–21 (IJ Dec. at 4–5). The IJ cited numerous inconsistences in Lopez-Salgado's testimony, including the dates that he left Chiapas and entered the United States; his high school graduation year; the timeline of when his three sisters came to the United States; and the threats he received from Edgar and Rigoberto. *Id.* at 128–35 (IJ Dec. at 12–19). Additionally, the IJ found "specifically that the respondent would not take his children back to Mexico." *Id.* at 133 (IJ Dec. at 17). Lopez-Salgado testified that his sisters and parents were familiar with the problems he had in Mexico, but none of his family members testified at his hearing or provided sworn or unsworn statements of support. *Id.* at 126–27 (IJ Dec. at 10–11). The IJ also found that, "because [Lopez-Salgado] lied in order to try to get withholding of removal, he *ipso facto* cannot demonstrate his good moral character for the last five years" and thus would be ineligible for voluntary departure. *Id.* at 121 (IJ Dec. at 5).

Lopez-Salgado appealed the IJ's decision to the BIA and asked that his case be heard by a three-member panel. *Id.* at 46–47 (BIA Br. at 2–3). In his BIA brief, Lopez-Salgado requested that the BIA vacate the IJ's finding of "bad moral character"; reverse the IJ's finding that he would not take his children with him to Mexico; grant him withholding of removal or voluntary

departure; remand the case and require the IJ to provide notice and an opportunity to provide corroborating evidence; and find that Lopez-Salgado did suffer persecution on account of a protected ground. *Id.* at 66 (BIA Br. at 22). On February 3, 2014, Lopez-Salgado filed a motion to remand on the basis of new evidence—the fact that he had been awarded sole legal custody of his daughters. *Id.* at 19 (Mot. to Remand at 2).

The BIA issued its decision on June 5, 2014, dismissing Lopez-Salgado's appeal and denying his motion to remand. *Id.* at 3–7 (BIA Dec. at 1–4). The BIA found that the IJ's credibility determination was based on "specific and cogent reasons" and therefore was not clearly erroneous. *Id.* at 3–4 (BIA Dec. at 1–2). The BIA also agreed with the IJ that Lopez-Salgado had not established eligibility for voluntary departure, because "false testimony for the purpose of obtaining any benefits under [the Immigration and Nationality Act ("INA")]" precluded a finding of good moral character, a prerequisite for voluntary departure. *Id.* at 6 (BIA Dec. at 4). Finally, the BIA found that the issue of child custody was not central to this case, and that the motion to remand was properly denied.

## II. ANALYSIS

### A. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). However, "[t]o the extent the BIA adopted the immigration judge's reasoning," we "also

review[] the immigration judge's decision." *Id.* We review legal conclusions made by the BIA and the IJ de novo, giving "substantial deference" to their "interpretation of the INA and accompanying regulations," and review their factual findings for substantial evidence. *Urbina-Mejia v. Holder*, 597 F.3d 360, 364 (6th Cir. 2010). Credibility determinations are reviewed for substantial evidence. *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012). "We cannot reverse such [factual] findings simply because we would have decided them differently." *Urbina-Mejia*, 597 F.3d at 364. Rather, these findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**B.  The BIA's and IJ's Adverse Credibility Finding Was Not Clearly Erroneous**

The IJ may:

> base a credibility determination on the demeanor, candor, or responsiveness of the applicant . . . [,] the inherent plausibility of the applicant's . . . account, the consistency between the applicant's . . . written and oral statements . . . [,] the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . [,] and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). "An adverse credibility determination is fatal to claims for asylum and relief from removal, preventing such claims from being considered on their merits." *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014).

Here, Lopez-Salgado makes three arguments related to his credibility. First, he argues that the IJ erred by finding him not credible, since the sole alleged inconsistencies in his testimony were related to "dates of events . . . which occurred over a decade ago." Pet'r Br. at

31. Second, he contends that the IJ relied on this erroneous credibility finding to find him lacking in good moral character and thus ineligible for voluntary departure. *Id.* at 35–36. Third, he argues that the BIA erred by not remanding the case to the IJ for additional fact-finding. *Id.* at 38–42. These arguments fail.

Lopez-Salgado first contends that many of the inconsistencies between his application and his testimony are the result of omissions in his application, rather than evidence of deliberate falsehoods. Additionally, he cites an opinion from this court to support the proposition that "the limited space provided by the initial application makes the mere omission of some of these incidents not only insignificant, but expected." *Id.* at 34 (citing *Ileana v. INS*, 106 F. App'x 349, 357 (6th Cir. 2004)). These claims are off the mark. The IJ's and BIA's findings were not based on mere omissions or insignificant discrepancies, but misstatements that went to many aspects of Lopez-Salgado's case. The BIA took note of the fact that Lopez-Salgado had provided inconsistent information on when he had left Mexico and when the rest of his family had immigrated to the United States. C.A.R. at 4 (BIA Dec. at 2). The IJ also recounted how Lopez-Salgado could "not keep his story straight" regarding why he left Mexico. *Id.* at 130–31 (IJ Dec. at 14–15). In fact, Lopez-Salgado appeared to make up a person's name (Edgar) out of whole cloth—he did not name Edgar in his application for withholding of removal. These are not trivial inconsistencies. They indicate an inability to recount a consistent narrative about why Lopez-Salgado came to the United States, when he came, who he came with, and why he should

not be removed. These inconsistencies provide substantial evidence to support the IJ's and BIA's adverse credibility finding.

Next, Lopez-Salgado argues that the IJ relied on an erroneous adverse credibility finding in order to deny him voluntary departure. We have already made clear that the IJ's adverse credibility determination—i.e., that Lopez-Salgado lied about essential aspects of his claim—was supported by substantial evidence. Only individuals found to have good moral character may be granted voluntary departure. "One of the seven specific categories of aliens precluded from establishing good moral character is an alien 'who has given false testimony for the purpose of obtaining any benefits under this Act.'" *In re Ortega-Cabrera*, 23 I. & N. Dec. 793, 796 (BIA 2005) (quoting 8 U.S.C. § 1101(f)(6)). "We find that Congress intended this category to include an alien who testifies falsely with the intent to obtain an immigration benefit at the proceeding in which good moral character is a requirement for relief." *Id.* Lopez-Salgado fits within this group: the IJ found that he had lied in an attempt to receive withholding of removal, a benefit under the INA.

Lopez-Salgado's third argument, that the BIA erred in denying his motion for remand on the basis of new evidence that he was granted sole custody of his children, is likewise unpersuasive. The BIA noted that the IJ's adverse credibility determination was largely not based on evidence related to Lopez-Salgado's custody arrangement, and thus the new evidence did not challenge the IJ's credibility determination. C.A.R. at 6 (BIA Dec. at 4). Since the credibility determination was the basis for the IJ's denials of withholding of removal and of

voluntary departure, "the respondent [did] not proffer[] sufficient evidence or argument to indicate that, if considered by the Immigration Judge, there would be a reasonable likelihood that his applications for relief would succeed on the merits." *Id.* The BIA properly denied the motion for remand.

## C. The IJ Was Not Required to Provide Lopez-Salgado with Notice and an Opportunity to Present Corroborating Evidence

The IJ's adverse credibility finding rested in part on the fact that Lopez-Salgado did not provide corroborating evidence from any members of his immediate family, all of whom live in Detroit and would have had "some knowledge of what happened to [Lopez-Salgado], or what he claims happened to him in Mexico." *Id.* at 126 (IJ Dec. at 10). Lopez-Salgado argues that he should have received notice and opportunity either to produce such corroborating evidence or to explain why such evidence was unavailable.

In our recent decision in *Gaye v. Lynch*, we stated that "[§ 1158(b)(1)(B)(ii)] does not suggest that the alien is entitled to notice from the IJ as to what evidence the alien must present. . . . We hold that federal law does not entitle illegal aliens to notice from the Immigration Court as to what sort of evidence the alien must produce to carry his burden." __ F.3d ___, ___, 2015 WL 3555937, at *7 (6th Cir. 2015). That holding governs this case, notwithstanding Lopez-Salgado's contentions to the contrary. Lopez-Salgado essentially argues that he was otherwise credible, even absent reasonably available corroborating evidence. That is not a fair portrayal of what actually occurred. Both the IJ and the BIA found Lopez-Salgado to lack credibility in

many respects. There is, as we have noted, substantial evidence supporting this finding. There is no meaningful distinction from *Gaye*.

**D. We Do Not Have Jurisdiction to Review Lopez-Salgado's Claim Related to His Membership in a Particular Social Group**

In order "[t]o prevail on a petition for withholding of removal under the INA, an alien must show that there is a 'clear probability,' that is, that 'it is more likely than not,' that []he would be subject to persecution on the basis" of his "race, religion, nationality, membership in a particular social group, or political opinion." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006) (citations omitted). Lopez-Salgado claimed membership in the particular social group of "Mexican citizens, returning to Mexico with their U.S. citizen children, who have spent the recent years in the United States <u>and</u> are considered foreigners in Mexico." C.A.R. at 228 (Exh. 4). But Lopez-Salgado, by his own admission, "did not push his particular social group claim to the Board" on appeal. Pet'r Br. at 50. That means that we do not have jurisdiction to reach this question now.

Under the INA, we "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1). The BIA held here that "the respondent did not meaningfully challenge the portion of the Immigration Judge's decision denying his application for withholding of removal based on claimed membership in a particular social group. We thus deem this issue waived on appeal." C.A.R. at 5 n.4 (BIA Dec. at 3). Lopez-Salgado did not, in other words, exhaust his claim because he did not present it before the BIA.

In his opening brief, Lopez-Salgado nonetheless points to two BIA decisions that he alleges fundamentally changed the law governing particular-social-group claims. He then, in his reply brief, alleges that the government waived its right to challenge this particular argument, because it did not discuss either of these two BIA decisions in depth in its brief. This argument makes little sense. Lopez-Salgado, not the government, waived the instant claim by not presenting it before the BIA. That is the end of the matter in terms of what we may or may not review.

**E. The BIA Did Not Err By Not Referring Lopez-Salgado's Case to a Three-Member Panel**

Finally, Lopez-Salgado argues that the BIA erred in failing to refer his case to a three-member panel. As Lopez-Salgado notes, we have "not yet formally issued a precedent decision addressing . . . [whether we have] jurisdiction over this issue." Pet'r Br. at 27; *see Nabhani v. Holder*, 382 F. App'x 487, 491 (6th Cir. 2010). Our sister circuits are split on this question. *See id.* We see no need to wade into this divide today. Lopez-Salgado's claim would fail even if we had jurisdiction over it. *See, e.g., Denko v. I.N.S.*, 351 F.3d 717, 732 (6th Cir. 2003) (assuming without deciding that we have jurisdiction to review a decision by the BIA to designate a case for summary affirmance without opinion). In his brief, Lopez-Salgado correctly identifies 8 C.F.R. § 1003.1(e)(6) as the regulation providing circumstances in which a case may be assigned to a three-judge panel. He then points to 8 C.F.R. § 1003.1(e)(6)(v)—the provision providing for panel review of "a clearly erroneous factual determination by an immigration judge"—in order to argue that "[a] panel was necessary to review the clearly erroneous factual claims" made in

this case. Pet'r Br. at 26. We have already held that the IJ's factual findings were not clearly erroneous, as they were supported by substantial evidence. *See Nabhani*, 382 F. App'x at 492. Lopez-Salgado's challenge is without merit.

## III. CONCLUSION

For the foregoing reasons, we **DENY** Lopez-Salgado's petition for review.