NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0686n.06

Case Nos. 14-3644/15-3037

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 08, 2015
DEBORAH S. HUNT, Clerk

ROMAN ALVAREZ-MEJIA,                           )
                                               )
                         Petitioner,           )
                                               )
             v.                                )        ON PETITION FOR REVIEW
                                               )        FROM THE UNITED STATES
                                               )        BOARD OF IMMIGRATION
                                               0        APPEALS
                                               )
LORETTA E. LYNCH, Attorney General,            )
                                               )        OPINION
                         Respondent.           )
                                               )

Before: COLE, Chief Judge; DAUGHTREY and DONALD, Circuit Judges.

BERNICE BOUIE DONALD, Circuit Judge. Petitioner Roman Alvarez-Mejia is a
Mexican citizen who entered the United States illegally in 1990. On March 18, 2007, the
Department of Homeland Security ("DHS") charged him with removability under U.S.C.
§ 1182(a)(6)(A)(i) as an alien present in the United States without admission or parole. Alvarez-
Mejia conceded removability in immigration court on February 8, 2008. He then sought
cancellation of removal or alternatively, voluntary departure. On November 14, 2012, the
immigration judge ("IJ") denied his request for cancellation of removal, but granted his request
for voluntary departure. The Board of Immigration Appeals ("BIA") denied his appeal on June
11, 2014. Alvarez-Mejia then filed a motion to reopen the proceedings and a request that the
BIA administratively close his case. The BIA denied both requests on December 16, 2014.
Now, Alvarez-Mejia appeals the refusal to reopen the proceedings and administratively close his

case to this Court. We hold that the BIA did not abuse its discretion in denying the request to reopen the proceedings or administratively close the case.

**I.**

**A.**

Alvarez-Mejia has resided in the United States since 1990, and has only returned to Mexico once in 1998 so he could marry. Appellant Br. 5. His wife resides with him in the United States and is an undocumented immigrant. *Id.* at 5-6. He has three children who are United States citizens. *Id.* at 6. For the past six years, Alvarez-Mejia has worked for the same employer. *Id.* If he is deported, he says that he will have to take his children to Mexico with him because no one in the United States is willing or able to care for them. *Id.* Alvarez-Mejia maintains that taking his children to Mexico will diminish their educational prospects since his hometown only has an elementary school. *Id.* In addition, Alvarez-Mejia worries that his youngest child, who suffers from asthma, will receive inadequate medical attention because the closest medical facility to his hometown is five miles away.

**B.**

On November 14, 2012, the IJ rejected Alvarez-Mejia's request for cancellation of removal for two reasons. First, Alvarez-Mejia failed to establish ten years of continuous presence in the country. Administrative R. 718. Second, he failed to show that his removal would cause his children exceptional and extreme hardship. *Id.* at 719-720. The BIA affirmed the IJ's ruling on June 11, 2014. *Id.* at 635.

Alvarez-Mejia subsequently filed a motion to reopen, asserting that he qualified for asylum, protection under the United Nations Convention Against Torture ("CAT"), and withholding of removal. *Id.* at 176. In his motion, Alvarez-Mejia argued that conditions in

Mexico had changed since 2012 and presented several exhibits to that effect. In addition, Alvarez-Mejia argued that new decisions from the BIA defining what constitutes a "particular social group," *Matter of M-E-V-G-,* 26 I&N Dec. 227 (BIA 2014); *Matter of W-G-R-*, 26 I&N Dec. 208 (BIA 2014), and a new Sixth Circuit decision regarding applications for asylum, *Mandebvu v. Holder*, 755 F.3d 417, 427 (6th Cir. 2014), warranted reopening the case. The BIA denied the motion on December 16, 2014.

## II.

This Court reviews BIA refusals to reopen for abuse of discretion. *Mezo v. Holder*, 615 F.3d 616, 620 (6th Cir. 2010). The BIA can abuse its discretion if (1) it declines to reopen without rational explanation, (2) in doing so it departs from established policies, or (3) its decision rests on invidious discrimination against a particular group. *Mezo*, 615 F.3d 616 at 620. Issues of law are reviewed de novo. *Id.* Likewise, this Court reviews refusals to administratively close a case for abuse of discretion. *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007).

## III.

We begin by assessing the claim that the BIA abused its discretion by refusing to reopen the case.

### A. Application for Asylum

The first theory Alvarez-Mejia presented in favor of reopening was that he now qualifies for asylum. The BIA may grant a request to reopen if the basis is a motion for asylum and is based on changed country conditions if the evidence of changed conditions is material and was not available at the previous hearing. 8 U.S.C. §1229a(c)(7)(C)(ii); 8 C.F.R. 1003.2(c)(1).

Crucial to Alvarez-Mejia's claim for asylum is that legal developments after the IJ issued the original decision in 2012 allegedly now make him eligible for asylum when he had no reason to believe he would be eligible for asylum before. The way Alvarez-Mejia sees it, there was a different definition of what constitutes a "particular social group" in 2012 than there is now. In 2012, he alleges that the touchstone of the BIA's inquiry in determining whether a particular social group existed was whether would-be persecutors could visually distinguish members of the group from the general population. Now, according to Alvarez-Mejia, the BIA's inquiry is whether Mexican society as a whole—and not just potential persecutors—views a group as socially distinct. On a related note, Alvarez-Mejia argues that the BIA now does not require the group in question to be visually distinct anymore. Because the law has changed so dramatically since the IJ's decision in 2012, Alvarez-Mejia maintains that refusal to reopen his case so that he can apply for asylum under the new legal standard denies him due process.

We disagree with Alvarez-Mejia's characterization of the BIA decisions he cites as meaningfully changing the requirements for proving a particular social group. Tellingly, in *Matter of M-E-V-G-*, the BIA wrote "[l]iteral or ocular visibility is not, and *never has been*, a prerequisite for a viable particular social group." *Matter of M-E-V-G-*, 26 I&N Dec. 227 at 238, emphasis added. The BIA noted too that it had recognized particular social groups that were not visible to the naked eye. *Id.* For example, it held that young tribal women who opposed female genital mutilation and Cuban homosexuals both qualified as particular social groups eligible for asylum. *Id.* The BIA's case law prior to *Matter of M-E-V-G-*, was therefore sufficiently clear to put asylum applicants on notice that literal visibility was not necessary to prove a particular social group.

Alvarez-Mejia is on somewhat stronger ground when he argues that *Matter of M-E-V-G-* abandoned the requirement that potential persecutors perceive that a particular social group existed. At one point, the BIA appears to accept the critique that it has been insufficiently clear about whether the perspective of persecutors or society as a whole drove the assessment of what makes a particular social group. *Id.* at 242. It wrote that it would "clarify" that the assessment turned on the perception of society as a whole, rather than the persecutors, after citing a Ninth Circuit case observing that neither the Ninth Circuit nor the BIA "has clearly specified whose perspectives are most indicative of society's perception of a particular social group." *Id.*, at 242, quoting *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1089 (9th Cir. 2013) (*en banc*). However, taken as a whole, the BIA's opinion suggests that the BIA views itself as having never endorsed the notion that the persecutor's perception was the crux of the analysis of a proposed particular social group. In fact, it writes that such a notion would conflict with its holding in a prior case decided in 2007. *Id.*, citing *Matter of A-M-E- & J-G-U-*, 24 I&N Dec. 69 (BIA 2007). Since we reject Alvarez-Mejia's argument that the BIA fundamentally altered its case law on what constitutes a particular social group, we must also reject his argument that refusal to reopen his case in light of subsequent BIA decisions denied him due process.[1]

That being the case, we must now decide whether Alvarez-Mejia's motion to reopen to apply for asylum was based on new evidence not available in the 2012 hearing, as 8 U.S.C. §1229a(c)(7)(C)(ii) requires. Alvarez-Mejia argues that Mexicans deported from the United States constitute a particular social group specially targeted for violence. The question is whether there was evidence available in 2012 allowing him to argue that such a group existed.

---

[1] Importantly, the BIA rejected Alvarez-Mejia's argument that Mexicans deported from the United States constituted a particular social group and cited prior authority for that proposition. Administrative R. 8. So even assuming that the BIA fundamentally altered its case law after 2012, the BIA found that that case law still would not qualify Alvarez-Mejia for asylum.

Alvarez-Mejia himself concedes the existence of the evidence. One of the articles he submitted in his brief was a Los Angeles Times article from September 8, 2012 describing how some criminals specifically targeted Mexicans deported by the United States. Richard Marosi, *Deportees to Mexico's Tamaulipas Preyed upon by Gangs*, L.A. TIMES (September 8, 2012) http://articles.latimes.com/2012/sep/08/local/la-me-deporteedanger-20120909. Alvarez-Mejia admits that this article was available in time for the 2012 hearing. Alvarez-Mejia did attach exhibits from 2013 and 2014 to his motion to reopen. Moreover, the BIA found that they "reflect ongoing and substantially similar conditions to those that existed at the time of the respondent's November 2012 hearing." Administrative R. 7. Since the BIA did not view the evidence as demonstrating changed country conditions, it was statutorily obligated to deny the petition to reopen to apply for asylum.

## B. CAT Claim

Alvarez-Mejia also asserted in his motion that he qualified for relief under the CAT because he will be singled out for torture by corrupt Mexican officials unwilling or unable to control gang violence. He accurately pointed out that one need not be part of a particular social group to be eligible for the CAT's protections.

In order to grant the petition to reopen so Alvarez-Mejia can apply for CAT relief, the BIA had to find that Alvarez-Mejia offered material evidence that was not available at his 2012 hearing. 8 C.F.R. 1003.2(c)(1). We must first note that evidence from prior to 2012 of gang violence and the Mexican government's inability to stop it was abundant and could have

been presented at the hearing.[2]  The BIA's decision not to consider evidence from 1990 to 2012 was therefore correct under the regulation.  *See id.*; Administrative R. 7.

Alvarez-Mejia rightly points out that the BIA did not address his CAT claim explicitly. Although it did do so implicitly in the two paragraphs prior to its discussion of why Mexicans deported from the United States do not constitute a particular social group, we concede that its explanation could have been clearer.  The BIA did nonetheless indicate that it viewed the evidence of violence from after 2012 as not meaningfully altering the way it would have perceived gang violence in Mexico prior to the 2012 hearing, which we think was a rational conclusion to draw.  *Id.* at 7.  We can infer from its decision, too, that the BIA viewed evidence of gang violence in 2012 as not meriting CAT relief, at least in Alvarez-Mejia's case.  *See id.* Accordingly, we find that the BIA did not abuse its discretion in denying the motion to reopen to apply for CAT relief.

**III.**

We now address Alvarez-Mejia's claim that the BIA abused its discretion in refusing to administratively close his case.

Alvarez-Mejia faulted the BIA for failing to consider the factors outlined in *Matter of Avetisyan*, 25 I&N Dec. 688, 690 (BIA 2012), about whether to close a case administratively. However, *Matter of Avetisyan* contemplates that a case in question will be open before it can be administratively closed.  In that case, the IJ never entered a final removal order.  *Id*. at 689.  The BIA provided the factors Alvarez-Mejia references here to help an IJ determine whether to administratively close an ongoing case when the government opposes closure.  *See id.* at 690. Here however, the case was closed and Alvarez-Mejia was already subject to a final removal

---

[2] The respondent correctly brought 2006 and 2011 Department of State reports to this Court's attention that discussed in detail gang violence in Mexico.

order. This crucial distinction means that *Matter of Avetisyan* furnishes no support for Alvarez-Mejia's argument.

Alvarez-Mejia's next argument that the BIA abused its discretion because its refusal to close the case administratively was inconsistent with two past decisions has some force, but is ultimately unpersuasive. He cited two unpublished decisions where the BIA administratively closed cases that were open and cited case law requiring agencies to treat similar cases similarly. *E.g.*, *Rashid v. Mukasey*, 531 F.3d. 438, 442-48 (6th Cir. 2008). However there are significant factual distinctions between this case and the one Alvarez-Mejia attached to his brief. In *In re Nancy Morales-Hernandez*, A# 200-676-148 (BIA Mar. 12, 2015), the United States Citizenship and Immigration Services (USCIS) placed the woman subject to a final removal order in deferred action pending availability of new visas for U-1 non-immigration status. Similarly in *In re Roland Cossy*, 2005 Immig. Rptr. LEXIS 2009 (BIA 2015), the BIA administratively closed a case in which there was already a final order to afford the respondent the opportunity to apply for deferred enforced departure of certain Haitian nationals. *Id.* at *2. In those cases, there was intervening government action regarding the alien to be removed that is simply not present here.

Therefore, the BIA did not abuse its discretion in declining to administratively close Alvarez-Mejia's case.

## IV.

For the foregoing reasons, we find that the BIA did not abuse its discretion in denying Alvarez-Mejia's motion to reopen and his request to close the case administratively.