**Jose Ricardo De La Cruz REYNA, Petitioner,**

v.

**Loretta E. LYNCH, Attorney General, Respondent.**

**Nos. 14–3662, 15–3093.**

United States Court of Appeals, Sixth Circuit.

Nov. 30, 2015.

BEFORE: DAUGHTREY, ROGERS, and WHITE, Circuit Judges.

ROGERS, Circuit Judge.

Jose De La Cruz Reyna seeks review of two decisions from the Board of Immigration Appeals (BIA). In the first decision, the BIA dismissed De La Cruz's appeal seeking cancellation of removal proceedings and granted him voluntary departure. In the second decision, the BIA denied De La Cruz's motion to reopen the removal proceedings and De La Cruz's alternative motion for administrative closure. The BIA ruled correctly in both decisions.

De La Cruz was admitted to the United States in 2000 on a nonimmigrant border crossing card that allowed him to remain in the United States within twenty-five miles of Roma, Texas for a period of seventy-two hours. De La Cruz remained in the United States for a period longer than seventy-two hours and traveled more than twenty-five miles from Roma. On November 22, 2010, the Department of Homeland Security served De La Cruz with a Notice to Appear, charging him with removability under Immigration and Nationality Act § 237(a)(1)(B) for remaining in the country longer than permitted. At De La Cruz's hearing before an Immigration Judge (IJ), he admitted the factual allegations contained in the Notice to Appear and conceded removability.[1] De La Cruz sought cancellation of removal and, in the alternative, voluntary departure.

The IJ denied De La Cruz's applications for cancellation of removal and voluntary departure. The IJ first denied the application for cancellation of removal, determining that De La Cruz had failed to establish that he had resided in the United States for a continuous period of ten years prior to being served with the Notice to Appear, that his removal would result in exceptional and extremely unusual hardship to his mother, or that he had demonstrated good moral character during the requisite period. As a matter of discretion, the IJ also denied the application for voluntary departure. De La Cruz timely appealed the IJ's decision to the Board of Immigration Appeals.

A single member of the BIA, rather than a three-member panel, decided De La

1. De La Cruz contested the exact date of his entry into the United States. However, he conceded all facts in the Notice to Appear that are relevant to this appeal.

Cruz's appeal. The single-member Board affirmed the IJ's denial of cancellation of removal on the sole basis that De La Cruz had failed to establish that his removal would result in exceptional and unusual hardship to his lawful-permanent-resident mother. Notwithstanding the IJ's moral-character determination, the Board granted De La Cruz's request for voluntary departure and stated: "In the absence of a clear indication in the record that the respondent is statutorily ineligible for voluntary departure, and weighing the equities and the adverse factors presented, we find that the respondent is eligible for and deserving of this minimal form of relief." De La Cruz filed a timely petition for review of the decision with this court.

After the time for voluntary departure, but within the time limit for reopening, De La Cruz filed with the BIA timely motions to reopen and for administrative closure. He argued that he became eligible for asylum and withholding of removal on account of changed circumstances in Mexico and his membership in the proposed group of "Americanized Mexican deportees," and that he also became eligible for relief under the Convention Against Torture (CAT). He also stated that intervening case law had transformed the "particular social group" determination in the asylum and withholding-of-removal analyses. In the alternative, De La Cruz requested that the BIA administratively close his proceedings until the priority date for his approved visa petition—filed in 1998 by his sister, a United States citizen—became current, when he could then file for adjustment of status. The BIA construed this as three requests: (1) to reopen the proceedings to apply for asylum, withholding of removal, and relief under the Convention Against Torture; (2) to reopen the proceedings to apply for adjustment of status; and (3) for administrative closure.

The BIA denied all of De La Cruz's requests. First, the BIA stated that "the motion [did] not set forth evidence that is new, material, and could not have been discovered and presented at the prior hearing." Also, the BIA found that the evidence did not reflect a material change in conditions in Mexico since De La Cruz's initial hearing in 2012. The BIA further found that De La Cruz had not made a prima facie case that he was eligible to apply for asylum, withholding of removal, or relief under the Convention Against Torture. First, the BIA stated that De La Cruz did not show that his fear of persecution was based on his being a member of a particular social group. Second, the BIA found that De La Cruz failed to demonstrate the likelihood of his being tortured upon his return "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." The BIA therefore denied De La Cruz's first request.

The BIA also denied De La Cruz's second and third requests. Regarding the motion to reopen to apply for adjustment of status, the BIA stated that De La Cruz failed to show prima facie eligibility for such relief because the voluntary-departure time that the BIA previously granted had expired before De La Cruz filed his motion to reopen. As an independent basis for the BIA's denying De La Cruz's second request, it stated that De La Cruz failed to show that a visa was available to him. Finally, with regard to De La Cruz's request for administrative closure, the BIA held that it would not grant administrative closure because De La Cruz could have raised the argument at his initial hearing, but did not, and because "the argument for such action [was] made after a final order of removal ha[d] been entered." The BIA therefore denied De La Cruz's other two requests. De La Cruz petitions this court

for review of the BIA's determinations and asks this court to reverse both decisions.

■ The point of De La Cruz's challenge to the BIA's first order is somewhat difficult to ascertain. De La Cruz explicitly disavows that he is challenging the IJ's denial of cancellation of removal. Instead he challenges the BIA's refusal to convene a three-member panel on the following rationale: the BIA could not reverse an IJ without convening a three-member panel, and the BIA effectively reversed the IJ by granting voluntary departure, since voluntary departure would not have been allowed without "reversing" the IJ's determination that De La Cruz had not demonstrated good moral character.[2] It is not clear from De La Cruz's brief, however, what accepting this argument does for him. The most likely benefit to him of accepting this argument is that because the voluntary departure that

he requested was wrongly awarded to him, he could not be denied reopening in the BIA's second order on the ground that he violated his voluntary departure. Lacking any other suggestion, we assume that this is what his counsel has in mind. In any event, there was no procedural irregularity because the grant of voluntary departure was not beyond the scope of a single member's power under 8 C.F.R. § 1003.1(e)(5).[3] The regulation relied upon by De La Cruz, 8 C.F.R. § 1003.1(e)(5), states:

> If the Board member to whom an appeal is assigned determines, upon consideration of the merits, that the decision is not appropriate for affirmance without opinion, the Board member shall issue a brief order affirming, *modifying*, or remanding the decision under review, unless the Board member designates the case for decision by a three-member

---

**2.** De La Cruz also argues summarily that the single board member erred in not explicitly ruling on his motion for a three-member panel. However, unlike other regulations which specify the Board must render decisions in a written order, *see* 8 C.F.R. § 1003.2(i), nothing in the applicable regulation requires a board member to issue a written ruling on a motion to submit a case to a three-member panel, *see generally* 8 C.F.R. § 1003.1. Thus, the BIA did not err in not doing so.

**3.** There is some question as to whether the decision to have a single-member BIA ruling is judicially reviewable under 5 U.S.C. § 701(a)(2), dealing with matters committed to agency discretion by law. "Whether an applicant may challenge the BIA's decision to streamline his case pursuant to the Administrative Procedure Act remains an open question before this court." *Nabhani v. Holder,* 382 Fed.Appx. 487, 491 (6th Cir.2010). As we have done in many other instances, we assume without deciding, for purposes of argument, that the issue is reviewable, but reject the challenge to the single-member BIA assignment. *See Lopez–Salgado v. Lynch,* 618 Fed.Appx. 828, 833–34 (6th Cir.2015); *Nabhani v. Holder,* 382 Fed.Appx. 487, 491 (6th Cir.2010); *Balliu v. Gonzales,* 192 Fed.Appx.

427, 435 (6th Cir.2006); *Denko v. I.N.S.,* 351 F.3d 717, 732 (6th Cir.2003). The government additionally argues that because De La Cruz's challenge is to the BIA's determination regarding voluntary departure, we have no jurisdiction over this challenge pursuant to 8 U.S.C. § 1252(a)(2)(B), which provides, "no court shall have jurisdiction to review … any judgment regarding the granting of relief under section … 1229c," which pertains to voluntary departure. *Id.* at § 1229c. However, as the government concedes, we retain jurisdiction "where voluntary departure raises a constitutional or legal question." *Patel v. Gonzales,* 470 F.3d 216, 220 (6th Cir.2006); *see also* 8 U.S.C. § 1252(a)(2)(D). Here, De La Cruz challenges not the BIA's discretionary grant of voluntary departure, but rather whether a single member had statutory authority to grant it under these circumstances. "Where our decision requires resolution of a contested interpretation of language in the statute or the regulations, the appeal will fall within our jurisdiction." *Ettienne v. Holder,* 659 F.3d 513, 517 (6th Cir.2011). Thus, because De La Cruz's challenge raises a legal question, we have jurisdiction to consider it.

panel under paragraph (e)(6) of this section under the standards of the case management plan. A single Board member may reverse the decision under review if such reversal is plainly consistent with and required by intervening Board or judicial precedent, by an intervening Act of Congress, or by an intervening final regulation.

8 C.F.R. § 1003.1(e)(5) (emphasis added). It is thus within the scope of a single member's power under (e)(5) to modify the IJ's decision, and that is what the BIA did in its granting of De La Cruz's request for voluntary departure. The BIA did not reverse the IJ's decision to remove De La Cruz; the BIA simply allowed for De La Cruz to depart voluntarily rather than under a removal order. "The word 'modify' ... has a connotation of increment or limitation. Virtually every dictionary ... says that 'to modify' means to change moderately or in minor fashion." *MCI Telecomm. Corp. v. American Tel. & Tel. Co.*, 512 U.S. 218, 225, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994). Under both the IJ and BIA decisions, De La Cruz was required to leave the United States. The decision to grant De La Cruz's request for voluntary departure was a minor change to the IJ's decision to remove De La Cruz and was therefore a modification.

Even if the board member erred in granting De La Cruz's request for voluntary departure, De La Cruz must still demonstrate prejudice. *See* 5 U.S.C. § 706 ("In [reviewing agency action], ... due account shall be taken of the rule of prejudicial error."). In *Villegas de la Paz v. Holder*, 640 F.3d 650, 656 (6th Cir.2010), we stated that "[A]n agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses." (quotation marks and citation omitted). *See also*

*Coalition for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 468 (6th Cir.2004). Here, the alleged error was made in De La Cruz's favor; the single board member *granted* the relief De La Cruz sought, voluntary departure. Therefore, he cannot demonstrate the error was prejudicial. In *United States v. Dedman*, 527 F.3d 577, 587 (6th Cir.2008), by analogy, we found harmless error in a criminal case where the error benefitted the defendant. *See also United States v. Ayotte*, 741 F.2d 865, 870 (6th Cir.1984) (same).

■ In its second order, the BIA properly denied reopening because De La Cruz failed to make a prima facie case of eligibility for asylum, CAT relief, or withholding of removal. The BIA found that De La Cruz's proposed social group of "Americanized Mexican deportees" lacked the requisite "particularity" and "social distinction" to constitute a "particular social group" for asylum and withholding-of-removal purposes. De La Cruz challenges this aspect of the BIA's reopening denial on the ground that intervening BIA precedent required the BIA to remand the social-group determination to the IJ. *Matter of M–E–V–G–*, 26 I. & N. Dec. 227, 2014 WL 524499 (BIA 2014); *Matter of W–G–R–*, 26 I. & N. Dec. 208, 2014 WL 524498 (BIA 2014). De La Cruz argues that these decisions fundamentally changed the standard applicable to his asylum and withholding application and that due process compelled the BIA to remand to the IJ with the opportunity for De La Cruz to present new arguments and evidence. However, these decisions pre-dated the BIA's decision, and *M–E–V–G–* was indeed cited by the BIA in its decision denying De La Cruz's motion to reopen. Moreover, in both *Matter of M–E–V–G–* and *Matter of W–G–R*, the BIA explicitly stated that it was merely clarifying its precedents, not changing them, and cited earlier Board

decisions that were consistent with its interpretation in those cases. *Matter of M–E–V–G–*, 26 I. & N. Dec. at 245; *Matter of W–G–R–*, 26 I. & N. Dec. at 217. In recent decisions, this Court has also found that *Matter of M–E–V–G–* and *Matter of W–G–R–* did not "meaningfully chang[e] the requirements for proving a particular social group." *Alvarez–Mejia v. Lynch,* No. 14–3644, 628 Fed.Appx. 388, 390, 2015 WL 5846020, at *2 (6th Cir. Oct. 8, 2015); *see also Aguilar–Aguilar v. Lynch,* 620 Fed.Appx. 528, 533–34 (6th Cir.2015). Thus, De La Cruz's contention that he could not have brought his asylum claim earlier because his proposed social group would not have been covered under the Board's prior definition of this term is without merit. In any event, an agency's clarification or change in an applicable standard for relief does not necessarily require a new hearing at a lower level of the agency process before the agency can rule. *See Nunez–Avina v. Lynch,* 628 Fed.Appx. 418, 2015 WL 5946426 (6th Cir. Oct. 13, 2015). De La Cruz cites no court holding that there is such a requirement.

De La Cruz briefly argues that the BIA improperly failed to look at developments occurring between 2000, when he entered the United States, and his 2012 hearing. This argument fails because the BIA properly considered only the evidence De La Cruz produced regarding changes in Mexico's conditions between the time of his 2012 hearing and the time of the motion to reopen. De La Cruz relies on *Mandebvu v. Holder,* 755 F.3d 417 (6th Cir.2014), in this connection, but *Mandebvu* is inapposite. In *Mandebvu,* we held that incremental changes in country conditions regarding persecution can factor into the analysis of changed circumstances for asylum-eligibility purposes. *Id.* at 426–28. De La Cruz, however, was required by statute and regulation to provide evidence that was previously unavailable and could not have been discovered at the time of his 2012 hearing. *See* 8 U.S.C. § 1229a(c)(7)(B); 8 C.F.R. § 1003.2(c)(1). Thus, at issue was not De La Cruz's eligibility for asylum but what he was required to produce to support his motion to reopen. Evidence from 2000 through 2012 regarding changed conditions in Mexico was available at the time of De La Cruz's 2012 hearing. The BIA therefore properly considered only the evidence of changed country conditions *after* De La Cruz's 2012 hearing.

De La Cruz's remaining argument with respect to the absence of a prima facie asylum case is that the BIA applied the wrong standard. In this regard, De La Cruz argues that the BIA improperly applied a 51% burden of proof to De La Cruz's fear of persecution, rather than a 10% burden. This argument is without merit. The burden for a motion to reopen is a heavy one, and the movant must show "that if proceedings before the immigration judge were reopened ... the new evidence offered would likely change the result of the case." *Matter of Coelho,* 20 I. & N. Dec. 464, 473 (BIA 1992). This is the burden that the BIA applied to De La Cruz's motion to reopen. De La Cruz's argument conflates the lower burden to be applied in an asylum determination—"a well-founded fear of persecution," 8 C.F.R. § 208.13(b)(2)—with the burden applied to a motion to reopen. In the context of a motion to reopen, De La Cruz had a heavy burden to show that the new evidence offered regarding his fear of persecution would likely change the result if the case were reopened before the IJ. There is nothing in the BIA's decision suggesting it applied an improper burden of proof, and the BIA therefore did not abuse its discretion in determining that De La Cruz failed

to make a prima facie case of eligibility for asylum and for withholding of removal.[4]

With respect to the Convention Against Torture, the BIA also properly denied the petition to reopen because De La Cruz failed to make a prima facie case of eligibility for relief. The BIA considered De La Cruz's evidence regarding criminal gangs and cartel members' victimizing "Mexicans, including returnees, and non-Mexicans." The BIA also considered De La Cruz's evidence that showed "the ongoing efforts of the Mexican Government to combat, rather than acquiesce in, such violence." In the context of a reopening petition requiring prima facie evidence, the BIA did not abuse its discretion in concluding that De La Cruz failed to meet his burden, which required presentation of a prima facie case that he "will be tortured if removed to Mexico by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1).

The BIA also properly rejected De La Cruz's alternative basis for reopening—to enable him to apply for adjustment of status. The BIA rejected reopening on that basis for two independent reasons: he had not departed within the 15–day voluntary departure period, and in any event he had not shown that an immigrant visa was available. De La Cruz does not challenge the second independent ground on appeal. In order to be eligible for adjustment of status on application for an immigrant visa, an immigrant visa must be "immediately available to [the applicant] at the time his application [for adjustment of status] is filed." 8 U.S.C. § 1255(a). De La Cruz makes no argument that the BIA

abused its discretion in making this determination, and this is dispositive of De La Cruz's motion to reopen for adjustment of status. Thus, based on the record, the BIA did not abuse its discretion by denying De La Cruz's motion for want of an available visa. Because this is an independent ground for denial of De La Cruz's motion, we need not reach the issue of whether the voluntary-departure penalties attached.

Finally, the BIA did not err in its denial of De La Cruz's motion for administrative closure to await the availability of a visa. The BIA denied this relief because De La Cruz did not present his argument for closure either at the 2012 hearing or indeed before the final order of removal was entered. De La Cruz argues that the same BIA member ordered administrative closure in another case in which the final order had been entered. The decision to deny administrative closure in De La Cruz's case, however, was not based solely on a final order's existence; the BIA also denied relief upon De La Cruz's failure to present the visa-availability argument at the 2012 hearing. In order to administratively close a case in which a final order has been entered, the BIA must first reopen the case. Because the evidence for De La Cruz's visa-availability argument was available at the time of his 2012 hearing, a reopening and subsequent closure was not warranted. The BIA did not abuse its discretion in reaching this conclusion.

De La Cruz further argues that, in denying his motion for administrative closure, the BIA failed to consider each factor laid out in *Matter of Avetisyan*, 25 I. & N. Dec. 688 (BIA 2012). De La Cruz cites a

---

4. Moreover, in determining that De La Cruz could not make out a prima facie case for asylum, the BIA did not rely on De La Cruz's "well-founded fear of persecution," but rather concluded that De La Cruz had not presented a sufficiently particular or socially distinct "particular social group."

headnote from *Avetisyan* and argues that its language requires the BIA to consider a list of factors in analyzing a motion for administrative closure. This argument is unpersuasive. The actual text of *Avetisyan* states that "when evaluating a request for administrative closure, *it is appropriate for* an Immigration Judge or the Board to weigh all relevant factors presented in the case," including certain enumerated factors. *Avetisyan*, 25 I. & N. Dec. at 696 (emphasis added). This is not an imposition of a requirement, but rather a statement that an IJ or the BIA may consider various factors. Where, as here, the BIA's administrative-closure decision rested on its determination not to reopen the case in order to administratively close it, the Board did not abuse its discretion in not explicitly mentioning these factors. The BIA thus did not abuse its discretion in denying De La Cruz's motion for administrative closure.

De La Cruz's petitions for review are denied.

HELENE N. WHITE, Circuit Judge, concurring.

I concur except with respect to the determination that the grant of voluntary departure was a modification of the IJ's order, not a reversal. The government has not asked us to construe this action as a modification and we need not decide the issue because, in either case, any error was harmless for the reasons stated.