\NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0672n.06
Filed: August 5, 2005

No. 04-3398

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FERDI CATAJ,
     *Petitioner,*

               v.

ALBERTO GONZALES,
U.S. ATTORNEY GENERAL,
     *Respondent*.

Petition for Review of an
Order of the Board of Immigration
Appeals

_____/

Before: KENNEDY, CLAY, and GILMAN, Circuit Judges

**Kennedy, J.** Petitioner Ferdi Cataj requested asylum, withholding of removal, protection

under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading

Treatment (CAT), and voluntary departure. An Immigration Judge (IJ) denied his claims and, in a

single member opinion, the Board of Immigration Appeals (BIA) affirmed that decision. In his

petition for review, Petitioner asserts that both the IJ and the BIA failed to correctly adjudicate his

claims. He also argues that the BIA failed to follow its own regulations when it declined to assign

his case to a three member panel. For the following reasons, we **DENY** the petition for review.

**BACKGROUND**

Petitioner Ferdi Cataj is an ethnic Albanian and a citizen of Serbia-Montenegro. He entered

the United States without inspection through Texas on or about June 19, 2000. Shortly thereafter,

he was apprehended by agents of the former Immigration and Naturalization Service, served with

a notice to appear, and charged with removability under section 212(a)(6)(A)(i) of the Immigration

and Naturalization Act, 8 U.S.C. § 1182(a)(6)(A)(i), for being in the United States without having been admitted or paroled. Petitioner conceded removability, but applied for asylum, withholding of removal, protection under the CAT, and voluntary departure. Petitioner also requested a change of venue to Cleveland, Ohio. The Immigration Court granted his request for a change of venue.

An IJ, after conducting a merits hearing on Petitioner's applications, denied his requests and ordered him deported to Yugoslavia. During the hearing, Petitioner testified that he had received a draft notice from the Yugoslavian government in 1991 during the Bosnian war. He testified that he did not want to serve due to his belief that the war was unjust. He secured fraudulent medical documentation which stated that he had asthma. Petitioner did not suffer from any medical disability.

Petitioner also testified that he left Serbia-Montenegro, Yugoslavia after an incident on August 24, 1993. Petitioner was listening to Albanian music on a tape recorder while preparing nets to go fishing with his father. A passing driver took the tape recorder and broke it. Petitioner fought with this individual, after which, the driver obtained a gun and shot Petitioner's father in the leg. All the parties were taken to the police station. Petitioner was detained by the Yugoslavian police for approximately four weeks. The police beat him, questioned him about his listening to Albanian music, his having disturbed the peace (presumably in relation to the above incident), and avoiding his military service. He was released with instructions to report for military duty. Instead of complying with the police directive, Petitioner fled to Albania. He lived in Albania without incident. He also spent some time illegally working in Greece and in Italy. He was deported back to Albania from both countries. He never sought or received refugee status in any country.

2

Both Petitioner and the Government submitted the 2001 Country Reports on Human Rights Practices for the Federal Republic of Yugoslavia (2001 Country Report) as evidence. That report stated that "A government law requiring military service was enforced only sporadically, and there were no forced conscriptions during the year." Joint Appendix (J.A.) at 137. Furthermore, the report described an amnesty law that applied to those persons, who, like Petitioner, had avoided compulsory military service during recent Yugoslavian conflicts. *Id.* at 139. The report also indicated that ethnic Albanians were subject to some harassment and some arbitrary arrest, but that the government had made progress in these areas in recent years. *Id.* at 132-33, 142-43, 164-70.

The IJ denied petitioner's request for relief and ordered him deported to Yugoslavia. The IJ did not issue a specific credibility finding but considered Petitioner's claim as though he were credible. The IJ found that Petitioner had failed to prove any grounds for asylum and that he was an economic refugee. The IJ also found that Petitioner had failed to show that the current Yugoslavian government would punish Petitioner. The IJ also found that because Petitioner lived and worked in Albania for a year and a half without incident, he was not directly fleeing persecution. Finally, the IJ questioned whether Petitioner would warrant the exercise of discretion in view of his failure to seek asylum in Albania, Greece, or Italy. Finally, the IJ denied Petitioner's request for voluntary departure because the IJ was not satisfied that Petitioner would depart as required.

Petitioner filed a timely appeal to the BIA. In a single-member opinion, the BIA dismissed the appeal, stating that it had reviewed the record and agreed with the IJ that Petitioner had failed to meet his burden of proving past persecution, a well-founded fear of future persecution, or a likelihood of future persecution or torture in Yugoslavia as required by the CAT. The BIA also

3

affirmed the IJ's denial of Petitioner's request for voluntary departure. Petitioner now asks this court to review the BIA's decision.

## ANALYSIS

A.      Sufficient evidence exists to uphold the BIA's decision on the merits.

We review the factual findings underlying the BIA's denial of relief with great deference, and we uphold them on review unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). To reverse, we must find that "the evidence not only supports a contrary conclusion, but indeed *compels* it." *I.N.S. v. Elias-Zacarias,* 502 U.S. 478, 481 n.1 (1992) (italics in original); *Klawitter v. I.N.S.*, 970 F.2d 149, 151-52 (6th Cir. 1992) (identifying the standard of review as the substantial evidence standard).

Under this very deferential standard of review, we uphold the BIA's denial of relief. Although Petitioner failed to show that he was persecuted on account of a statutorily protected ground, or that any harassment he suffered rose to the level of persecution, we choose to affirm the BIA based on its determination that Petitioner's fear of future persecution is not objectively reasonable. In order to prove a well founded fear of future persecution, Petitioner must not only have a subjectively genuine fear of persecution, but an objectively reasonable possibility of persecution must exist. *Perkovic v. I.N.S.* 33 F.3d 615, 620-21 (1994).

Petitioner based his claim of fear of future persecution on his ethnicity and his having avoided military service. He cannot, however, deny that Yugoslavia's amnesty law has protected others in his situation or that the law is designed to provide amnesty for the period that he avoided military service. In addition, although the 2001 Country Report indicates that ethnic Albanians suffered some abuse by authorities, the report also states that the government has made progress in

4

this area in recent years. J.A. at 132-33. The amnesty law as well as the other information in the 2001 Country Report provide sufficient evidence on which to uphold the BIA's decision under our "compelled to find to the contrary standard." Given that we are not compelled to find that Petitioner would be subject to persecution based on a protected ground upon his return to Yugoslavia, his petitions for asylum and withholding of removal were properly denied.[1] Similarly, we do not believe that Petitioner established, as he must under 8 C.F.R. § 208.16(c)(2), that he would likely be tortured upon his repatriation to Yugoslavia, particularly in view of the previously discussed evidence in the 2001 Country Report. We therefore deny his request for relief under the CAT.[2]

B.      The BIA did not improperly apply its regulations when it failed to assign this case for review by a three member panel.

Under the regulations, if a board member determines that a case is not appropriate for affirmance without opinion, the board member must issue a brief order affirming, modifying, or remanding the decision. *See* 8 C.F.R. § 1003.1(e)(5). The single board member may reverse the decision only "if such reversal is plainly consistent with and required by intervening Board or

---

[1]Petitioner also argues that the IJ failed to take into account evidence that Petitioner would be subject to persecution should he return to Yugoslavia. The only evidence Petitioner points to, however, is his testimony and the evidence in the 2001 Country Report. The IJ stated that he took the 2001 Country Report and Petitioner's testimony into account in rendering the decision. J.A. at 10. Furthermore, Petitioner argues that the IJ improperly decided that Petitioner was firmly settled in Albania. There is no indication from the IJ's decision that he either made or relied on such a finding. Although the IJ's oral decision does mention that Petitioner was able to live in Albania for a year and a half without incident, the IJ did not come to a legal conclusion as to whether living in Albania during that time constituted firm resettlement. Even if the IJ had reached a legal decision on firm resettlement, the other evidence in the record would require that we affirm the BIA's decision.

[2]Petitioner waived any argument he may have had on his eligibility for voluntary departure by not discussing it in his brief.

5

judicial precedent, by an intervening Act of Congress, or by an intervening final regulation." *Id.* Presumably, then, a single board member may not reverse a decision by an IJ based on a clearly erroneous factual determination (although a single board member may remand the case to the IJ for further fact-finding if necessary). The board member, may, however, assign a case to a three member panel if, and only if, it meets one of six criteria:

> (i) The need to settle inconsistencies among the rulings of different immigration judges;
> (ii) The need to establish a precedent construing the meaning of laws, regulations, or procedures;
> (iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;
> (iv) The need to resolve a case or controversy of major national import;
> (v) The need to review a clearly erroneous factual determination by an immigration judge; or
> (vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

8 C.F.R. § 1003.1(e)(6). Thus, the powers of a three member panel under the regulations to reverse a case are broader than those afforded a single member. Given this difference in power, it could make a difference to the disposition of a case when a board member errs in determining whether to assign a case to a three member panel.

Petitioner in this case argues that his case should have been assigned to a three member panel for review. Petitioner, however, does not specifically identify which criteria of 8 C.F.R. § 1003.1(e)(6) would require a three member panel to review his decision. He bases most of his arguments on the factual determinations made by the IJ. As a result, it would appear that Petitioner is arguing that because the IJ made clearly erroneous factual determinations, the Board member who reviewed his case should have submitted it to a three member panel under 8 C.F.R. § 1003.1(e)(6)(v) so that the BIA could then reverse the IJ pursuant to its authority and power under 8 C.F.R. §

1003.1(e)(6)(vi) rather than the substantial evidence standard we use for merit review. *See* 8 U.S.C. § 1252(b)(4)(B). *See also I.N.S. v. Elias-Zacarias,* 502 U.S. 478, 481 (1992) ("The BIA's determination that Elias-Zacarias was not eligible for asylum must be upheld if 'supported by reasonable, substantial and probative evidence on the record considered as a whole.' 8 U.S.C. § 1105a(a)(4) [since repealed]." and citing *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939) which describes the substantial evidence standard); *Klawitter*, 970 F.2d at 151-52.

Petitioner's argument is unavailing. First, it is unclear whether this court has the authority to review decisions made by the BIA on how it disposes of its cases. *See, e.g., Tsegay v. Ashcroft*, 386 F.3d 1347, 1353-58 (10th Cir. 2004) (finding the BIA's decision to streamline a case to be an unreviewable decision); *Ngure v. Ashcroft*, 367 F.3d 975, 980-88 (8th Cir. 2003) (finding the BIA's decision to streamline a case to be an unreviewable decision in most instances). *But see Batalova v. Ashcroft*, 355 F.3d 1246, 1252-53 (10th Cir. 2004) (holding that the 10th Circuit does have power to review whether a single board member should have assigned a case to a three member panel under 8 C.F.R. 1003.1(e)(5).).

Second, on the record in this case, the outcome would be the same whether the evidence was reviewed under the clearly erroneous or the substantial evidence standard.[3] Under either standard,

_____

[3]Many courts have recognized that substantial evidence review is different from clearly erroneous review. *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999); *Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 278 (3rd Cir. 2004); *Menendez-Donis v.Ashcroft*, 360 F.3d 915, 918 (8th Cir. 2003); *Singh v. Brake*, 317 F.3d 1334, 1344-45 (Fed. Cir. 2002). *See K & M Joint Venture v. Smith Intern.*, 669 F.2d 1106, 1120 (6th Cir. 1982). This difference in these standards is important because while all cases that require reversal under the "compelled to conclude to the contrary" substantial evidence standard also require reversal under the clearly erroneous standard and while most cases that require affirmance under the substantial evidence standard also require affirmance under the clearly erroneous standard, it is possible that in a small subset of cases, a case that requires reversal under the clearly erroneous standard might still require affirmance under the "compelled to conclude to the contrary" substantial evidence standard. As a result, if that small subset of cases exists, an error

the IJ's case is supported by the evidence in the record. *See Denko v. I.N.S.*, 351 F.3d 717, 732 (2003) ("Assuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance, Denko's argument that the summary-affirmance-without-opinion procedure was invoked improperly in her case nonetheless must fail."). *See also Vasha v. Gonzales*, No. 03-3592, 2005 WL 1389003, at *9 (6th Cir. June 14, 2005) ("As we concluded above, substantial evidence in the record supports the IJ's adverse credibility determination, and therefore Vasha has failed to demonstrate past persecution or a well-founded fear of future persecution should he return to Albania. Moreover, Vasha has failed to demonstrate that he is eligible for withholding of removal as well. Assuming without deciding that judicial review of the BIA's case-management system is appropriate, we conclude that Vasha has failed to demonstrate that the case should have been reviewed by a three-member panel of the BIA.").

## CONCLUSION

For the foregoing reasons, we **DENY** the petition for review.

---

in the BIA's decision-making process would not be corrected by a circuit court reviewing the case on the merits.