RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RAMON AMEZOLA-GARCIA, a.k.a. Jose Rivera-Camarena,

        *Petitioner*,

    *v.*

LORETTA E. LYNCH, Attorney General,

        *Respondent*.

No. 15-3328

On Petition for Review of an Order
from the Board of Immigration Appeals.
No. A074387805.

Decided and Filed: April 11, 2016[*]

Before: BOGGS and ROGERS, Circuit Judges; BERG, District Judge.[**]

_____

### COUNSEL

**ON BRIEF:** George P. Mann, Maris J. Liss, GEORGE P. MANN AND ASSOCIATES, Farmington Hills, Michigan, for Petitioner. Colin J. Tucker, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

[*]This decision originally issued as an unpublished opinion filed on April 11, 2016. The court has now designated the opinion as one recommended for full-text publication.

[**]The Honorable Judge Terrence Berg, United States District Judge for the Eastern District of Michigan, sitting by designation.

---

**OPINION**

---

ROGERS, Circuit Judge.   Ramon Amezola-Garcia, a Mexican citizen who was ordered removed for being present in the United States without having been admitted or paroled, appeals the Board of Immigration Appeals's ("BIA's") denial of his applications for withholding of removal and voluntary departure.   He primarily argues that the BIA erred by sending his case to a single-member panel for review rather than to a three-member panel, by rejecting his argument that his familial relationship with his murdered brother-in-law will subject him to future persecution in Mexico, and by mischaracterizing the record in its voluntary-departure determination.   While the Government opposes most of Amezola-Garcia's petition, it concedes that the BIA's interpretation of the record in its voluntary-departure determination is problematic and warrants a remand.   In light of the Government's concession, the voluntary-departure determination will be remanded to the BIA for reconsideration of its decision.   The remainder of Amezola-Garcia's petition is without merit.

Amezola-Garcia unsuccessfully attempted to enter the United States in 1996 by presenting the resident alien card of another.   He agreed to return to Mexico in lieu of exclusion proceedings.   In 1997, Amezola-Garcia successfully entered the United States without being admitted or paroled.   Since that 1997 entry, Amezola-Garcia has traveled to Mexico and re-entered the United States without being admitted or paroled at least four different times (in 1998, 2001, 2003, and 2006).

In 2011, the Department of Homeland Security commenced removal proceedings against Amezola-Garcia.   Before the Immigration Judge ("IJ"), Amezola-Garcia admitted that he was removable pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without having been admitted or paroled.   In another appearance before the IJ, Amezola-Garcia submitted an application for withholding of removal and relief under the Convention Against Torture ("CAT").   Because the one-year deadline to seek asylum had elapsed, he did not apply for asylum.   Additionally, in the merits hearing before the IJ, Amezola-Garcia requested voluntary departure.

Amezola-Garcia's application for withholding of removal and CAT relief states that he fears he will be harmed and tortured on account of his membership in a particular social group if he returns to Mexico. He identifies his particular social group as "family which has been targeted by persons the government of Mexico cannot or will not control." The application lists Amezola-Garcia's parents and fifteen siblings as the members of his family, although later testimony indicated that it is not clear exactly how many siblings he has. With the exception of two brothers who live in the United States, his parents and all of his remaining siblings (one sister is deceased) live in Mexico. The application states that Amezola-Garcia's brother-in-law was a member of a "government organization of defense for Mexico" and was murdered in 2009 because he and his colleagues were investigating "criminal organizations" on behalf of the Mexican government. The application further states that "the family still feels scared and worr[ies] about repercus[s]ions from this investigation." The application also provides that cartels and people from Amezola-Garcia's hometown who are involved in criminal activities tend to threaten returnees from the United States. Finally, the application lists all of Amezola-Garcia's entries into the United States, but does not mention the 1996 incident where he was turned away at the border.

In the merits hearing before the IJ, while Amezola-Garcia first described his brother-in-law's murder as an "assassination," he later admitted that he did not know who killed his brother-in-law or why and that an investigation into the murder is still ongoing. Amezola-Garcia also stated that he did not know what type of work his brother-in-law did for the Mexican government, other than that "it was something that had to do with defense" and was not continuous work. When asked whether he feared if something might happen to him because of what happened to his brother-in-law, Amezola-Garcia responded "[w]ell, it could happen or not. One never knows." Amezola-Garcia also confirmed that he was never harmed in Mexico and that no one in his family (other than his deceased brother-in-law) has been threatened or harmed. However, he stated that he feared that he would be attacked along the way if he attempted to return to Mexico. When the IJ then asked "[s]o basically you're in the same shoes as anybody else from Mexico who has to return home," Amezola-Garcia responded "[y]es." Lastly, Amezola-Garcia testified that he did not include his 1996 attempted entry in his application because he forgot about the incident when filling out the application.

The IJ denied Amezola-Garcia's request for voluntary departure and his application for withholding of removal and CAT relief. First, the IJ found that Amezola-Garcia's failure to demonstrate that he has been a person of good moral character for the past five years precluded him from being permitted to depart voluntarily. The IJ reasoned that Amezola-Garcia lacked good moral character because he "prevaricated intentionally" with regard to his application for withholding of removal: His testimony was often inconsistent with his application regarding both his brother-in-law's death and the order in which his siblings were born, leaving the IJ to conclude that "he has made up his story out of absolutely nothing." The IJ then appeared to state that his lack of good moral character also precluded him from receiving withholding of removal.

Next, the IJ rejected Amezola-Garcia's application for withholding of removal because Amezola-Garcia's testimony was not credible. The IJ found Amezola-Garcia's testimony troubling due to its lack of detail, the absence of corroborating statements or testimony from his relatives, and the inconsistencies with his application. The IJ also found that Amezola-Garcia had not established that he would more likely than not be harmed on account of his family membership if he returned to Mexico. The IJ pointed to the fact that his remaining family members in Mexico have not been harmed or threatened following his brother-in-law's death and that Amezola-Garcia has voluntarily returned to Mexico on a number of occasions. Similarly, the IJ found that Amezola-Garcia failed to demonstrate eligibility for CAT relief because there is no evidence that he would be harmed by, or with the acquiescence of, the Mexican government.

Amezola-Garcia appealed to the BIA. Amezola-Garcia's brief to the BIA incorporated a motion for the appeal to be considered by a three-member panel and a request that proceedings be remanded for the IJ to clarify his denial of withholding of removal based on bad moral character. A single-member panel of the BIA, rather than a three-member panel, then affirmed the IJ's decision and dismissed the appeal. The BIA did not rely on the IJ's adverse credibility determination to affirm the denial of withholding of removal; rather, the BIA found that Amezola-Garcia's withholding-of-removal claim failed because he demonstrated neither past persecution nor a reasonable fear of future persecution. The BIA explained that the reasonableness of his claim of future persecution was undermined by the fact that his remaining family members in Mexico have not been harmed and by the fact that he voluntarily returned to

Mexico multiple times.  The BIA likewise affirmed the IJ's determination that Amezola-Garcia does not qualify for CAT relief because he did not establish that it is more likely than not that he will be tortured if he returns to Mexico.  Finally, the BIA agreed with the IJ that Amezola-Garcia does not qualify for voluntary departure because he "provided false testimony."  As proof of his false testimony, the BIA stated that "[Amezola-Garcia] testified that he had intentionally lied on his application about being in prior exclusion proceedings in 1996."

On appeal to this court, Amezola-Garcia argues that the BIA erred by failing to rule on his motion for a three-member panel and by not referring his case to a three-member panel, that the IJ erred by concluding that a lack of good moral character barred a grant of withholding of removal, that the BIA erred by not remanding the case for the IJ to clarify its withholding-of-removal ruling, that the BIA wrongly concluded that he did not have a reasonable fear of future harm if he returns to Mexico, and that the BIA engaged in impermissible fact-finding when it based its denial of voluntary departure on a mischaracterization of his testimony.[1]

First, assuming without deciding that the BIA's decision to assign a case to a single-member panel is judicially reviewable, the BIA did not err when it decided to streamline Amezola-Garcia's case to a single-member panel, because a single-member panel had the authority to decide Amezola-Garcia's case.[2]  Amezola-Garcia argues that a three-member panel was required under 8 C.F.R. § 1003.1(e)(6)(iii), (v), and (vi), which provide:

---

[1]Amezola-Garcia's opening brief does not challenge the BIA's denial of CAT relief.  Because arguments not raised in a party's opening brief are deemed waived, *see, e.g.*, *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013), Amezola-Garcia has waived any challenges to the BIA's denial of CAT relief.

[2]There is some question as to whether the BIA's decision to have a single-member panel review a case is judicially reviewable under 5 U.S.C. § 701(a)(2), which deals with matters committed to agency discretion by law.  "Whether an applicant may challenge the BIA's decision to streamline his case pursuant to the Administrative Procedure Act remains an open question before this court."  *Nabhani v. Holder*, 382 F. App'x 487, 491 (6th Cir. 2010).  As we have done in many other instances, we assume without deciding, for purposes of argument, that the issue is reviewable, but reject the challenge to the single-member BIA assignment.  *See Reyna v. Lynch*, Nos. 14–3662, 15–3093, 2015 WL 7729232, at *2 n.3 (6th Cir. Nov. 30, 2015); *Lopez-Salgado v. Lynch*, No. 14–3646, 2015 WL 4461091, at *6 (6th Cir. July 22, 2015); *Nabhani*, 382 F. App'x at 491; *Balliu v. Gonzales*, 192 F. App'x 427, 435 (6th Cir. 2006); *Denko v. I.N.S.*, 351 F.3d 717, 732 (6th Cir. 2003).  Such an assumption does not run afoul of *Steel Co. v. Citizens for a Better Environment*'s prohibition against "hypothetical jurisdiction," 523 U.S. 83, 93–101 (1998).  Although the parties couch their discussion in terms of whether we have "jurisdiction" to review the BIA's streamlining decision, arguments that a court may not review agency action that is "committed to agency discretion by law" under 5 U.S.C. § 701(a)(2) do not go to the jurisdiction of the court.  *See Gor v. Holder*, 607 F.3d 180, 196 (6th Cir. 2010) (Cole, J., concurring).

Cases may only be assigned for review by a three-member panel if the case presents one of these circumstances:

. . .

(iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents;

. . .

(v) The need to review a clearly erroneous factual determination by an immigration judge; or

(vi) The need to reverse the decision of an immigration judge or the Service, other than a reversal under § 1003.1(e)(5).

A single-member panel may affirm, modify, or remand any decision made by an IJ, but may reverse an IJ's decision only if "such reversal is plainly consistent with and required by intervening Board or judicial precedent, by an intervening Act of Congress, or by an intervening final regulation." 8 C.F.R. § 1003.1(e)(5). It appears to follow that "a single board member may not reverse a decision by an IJ based on a clearly erroneous factual determination." *Cataj v. Gonzales*, 140 F. App'x 600, 604 (6th Cir. 2005).

Amezola-Garcia's argument that a three-member panel was required to decide his case because a single-member panel lacks the authority to reverse an IJ's clearly erroneous factual determinations is meritless, because reversal did not occur in his case. A single-member panel undeniably has the authority to affirm an IJ's factual determinations, which is what occurred here. Amezola-Garcia attempts to limit the single-member panel's authority to affirm by citing the limits on its authority to reverse; however, whether the BIA's regulations limit a single-member panel's ability to reverse has no bearing on whether the regulations permit it to affirm.

Amezola-Garcia's argument could perhaps be read as a claim that a single-member panel is somehow compelled to affirm once it receives a case, regardless of the merits of the case. Under this theory, the BIA's initial decision to streamline a case to a single-member panel would thereafter completely foreclose the possibility of a reversal based on clearly erroneous factual determinations. That is not the law. A single-member panel "shall determine the appeal on the merits as provided in paragraph (e)(4) or (e)(5) of this section, unless the Board member determines that the case is appropriate for review and decision by a three-member panel under

the standards of paragraph (e)(6) of this section." 8 C.F.R. § 1003.1(e)(3). If the single-member panel had uncovered troublesome factual errors as it reviewed the merits of Amezola-Garcia's case, the single-member panel would not have been required nonetheless to affirm. Instead, as § 1003.1(e)(3) provides, the single-member panel could have sent Amezola-Garcia's case to a three-member panel for further review and possible reversal. The fact that the single-member panel did not send Amezola-Garcia's case to a three-member panel does not indicate that his due-process rights were violated, as Amezola-Garcia appears to claim, but instead merely reflects the fact that the BIA concluded that his claimed factual errors did not warrant reversal.

Amezola-Garcia's argument that his case had to be sent to a three-member panel based on § 1003.1(e)(6)(iii) also lacks merit, because both single-member and three-member panels are capable of reversing an IJ's error of law. 8 C.F.R. § 1003.1(e)(6)(iii) provides that a three-member panel may review a case when there is a "need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents." Likewise, a single-member panel may reverse an IJ's decision if "such reversal is plainly consistent with and required by intervening Board or judicial precedent, by an intervening Act of Congress, or by an intervening final regulation." 8 C.F.R. § 1003.1(e)(5). The two provisions appear to give single-member and three-member panels the same authority: the ability to reverse IJs' decisions that are contrary to law. Amezola-Garcia contends that the two standards are different and that the single-member panel did not have the authority to grant him the relief he requested. However, he does not explain how the two grants of authority differ, in what circumstances a single-member panel would not be able to reverse an IJ's decision based on an error of law, or why the legal errors he claims that the IJ made could be reversed only by a three-member panel. Accordingly, he has not shown that the BIA erred by referring his case to a single-member panel or that the BIA's actions caused him any prejudice.

Moreover, a three-member panel is not required for all cases in which a petitioner claims that the IJ made a clearly erroneous factual determination or issued a decision not in conformity with the law. The assignment of a case that presents one or more of the six circumstances listed in 8 C.F.R. § 1003.1(e)(6) to a three-member panel is not mandatory. *Koussan v. Holder*, 556 F.3d 403, 415 (6th Cir. 2009), *abrogated on other grounds by Judulang v. Holder*, 132 S. Ct.

476 (2011). Even when one or more of the six circumstances are present, the BIA may assign that case to a single-member panel. *Id.* Thus, the mere fact that Amezola-Garcia asserted that the IJ made clearly erroneous factual determinations and issued a decision not in conformity with the law did not compel the BIA to send his case to a three-member panel. Otherwise, as the Government argues, the purpose of 8 C.F.R. § 1003.1(e)(6)—to streamline the BIA's decision-making process—could be easily thwarted by a petitioner's cursory arguments asserting one of the § 1003.1(e)(6) grounds. Rather, it was permissible for the BIA to determine that Amezola-Garcia's case did not warrant review by a three-member panel on any of his asserted § 1003.1(e)(6) grounds and therefore that his case should be sent to a single-member panel for affirmance in accordance with 8 C.F.R. § 1003.1(e)(5).

Additionally, Amezola-Garcia's argument that the BIA erred by not explaining its decision to send his case to a single-member panel fails. The very act of a single-member panel affirming the IJ's decision serves as an explanation that the BIA did not believe that the IJ made any factual or legal errors that required reversal by a three-member panel. Further, any error relating to the BIA's lack of explanation was harmless because the BIA acted properly and within its discretion in referring Amezola-Garcia's case to a single-member panel.

Second, the BIA's determination that Amezola-Garcia did not show a clear probability of future persecution, and therefore is not entitled to withholding of removal, is supported by substantial evidence. When the petitioner's family members are also members of his or her protected group, the reasonableness of the petitioner's claim of future persecution is undermined when the petitioner's family members remain in the country of removal unharmed. *See, e.g.,* *Shvedko v. Holder*, 411 F. App'x 817, 821 (6th Cir. 2011) (citing *In re A–E–M,* 21 I. & N. Dec. 1157, 1160 (BIA 1998)). Here, Amezola-Garcia's claim is undermined because he testified that none of his relatives in Mexico has been harmed or threatened following his brother-in-law's death. Additionally, because Amezola-Garcia testified that he was not sure why his brother-in-law was killed, a reasonable factfinder would not be compelled to conclude that Amezola-Garcia will face harm due to his familial relationship with his deceased brother-in-law. Amezola-Garcia's testimony did not establish that his brother-in-law's killers have any interest in harming him.

The BIA's withholding-of-removal decision is also supported by Amezola-Garcia's testimony that his fear of returning to Mexico is based on general lawlessness and crime in that country. "[G]eneral civil disorder and lawlessness to which anyone living in [the country of removal] would be exposed" does not establish a well-founded fear of future persecution on account of a protected ground. *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004). While the presence of general lawlessness does not preclude a finding of a fear of future persecution on account of a protected ground, Amezola-Garcia's testimony that he fears that he will be attacked on his return to Mexico for the same reasons as "anybody else from Mexico who has to return home," further establishes that a reasonable factfinder would not be compelled to conclude that the reason he might face harm in Mexico is because of his familial relationship with his deceased brother-in-law.

However, in light of the fact that all of Amezola-Garcia's returns to Mexico occurred before his brother-in-law's death, we do not rely upon the BIA and Government's argument that Amezola-Garcia's voluntary visits to Mexico undermine his claim of future persecution.

Amezola-Garcia's arguments that the BIA's decision is not supported by substantial evidence are unavailing. The fact that the IJ erred by stating that bad moral character precludes a grant of withholding of removal does not warrant reversal, because the BIA did not rely upon that portion of the IJ's opinion in making its decision. We review the IJ's decision only to the extent that the BIA adopts the IJ's rationale. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Thus, because the BIA did not base its withholding-of-removal decision on the IJ's conclusion that Amezola-Garcia lacked good moral character, any error that the IJ made regarding Amezola-Garcia's bad moral character in relation to his application for withholding of removal is irrelevant to our review. Similarly, because the BIA found other grounds on which to affirm the IJ's withholding-of-removal ruling, the BIA had no reason to address Amezola-Garcia's motion to remand, and its failure to do so was not in error.

Also without merit is Amezola-Garcia's claim that the BIA's reliance on his relatives' remaining unharmed is "internally inconsistent" with his brother-in-law's murder. Contrary to Amezola-Garcia's characterizations, the BIA did not state that no harm has ever come to Amezola-Garcia's "family"; rather, it stated that no harm has come to Amezola-Garcia's

"parents, his siblings who remain in Mexico, or his nieces and nephews." The BIA's statement regarding Amezola-Garcia's parents, siblings, nieces, and nephews is not inconsistent with the fact that Amezola-Garcia's brother-in-law was killed. Likewise, Amezola-Garcia's argument in his reply brief that "his brother-in-law was murdered and that is a family member that was harmed" misses the mark. As the BIA explained in its decision, Amezola-Garcia's claim of future persecution is undermined because none of his *other* family members in Mexico—who are in the same situation Amezola-Garcia will be in once he returns to Mexico—has been harmed following the death of his brother-in-law.

Third, in light of the Government's voluntary request for a remand, the BIA's voluntary-departure determination is remanded to the BIA for reconsideration. It appears that the BIA was not correct when it stated that Amezola-Garcia testified that he lied on his application about the 1996 attempted entry; instead, the record shows that he testified that he forgot about the incident. In the past, we have fairly freely issued remands when an agency requests a voluntary remand, *see, e.g.*, *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416–17 (6th Cir. 2004), and such a remand is especially appropriate when, as is the case here, the remand is not opposed by the non-agency party.

We do not go further and order, as Amezola-Garcia urges in his reply brief, that on remand the BIA order a further remand to the IJ. Such an order goes beyond what the Attorney General requests, and would pretermit the opportunity of the BIA to rule on whether such a course is warranted. If the BIA would determine that a further remand is warranted, we need not direct that course. If the BIA determines that a further remand is not warranted, it should have the opportunity to make and support such a ruling.

Finally, we do not address Amezola-Garcia's argument—made for the first time in his reply brief—that an order should be issued permitting him to reenter the United States, ostensibly so that he could provide demeanor evidence to the IJ on remand.

For the foregoing reasons, Amezola-Garcia's petition is remanded to the BIA for further consideration of its voluntary-departure determination and is denied in all other respects.