NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0003n.06
No. 23-3439

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jan 04, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| FELIX KUSTONO, | ) | |
| Petitioner, | ) ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| Respondent. | ) ) | |
| | ) | OPINION |
| | ) | |

Before: GRIFFIN, BUSH, and LARSEN, Circuit Judges.

PER CURIAM. Felix Kustono petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). As set forth below, we **DENY** the petition for review.

Kustono, a native and citizen of Indonesia, entered the United States in May 2004 on a visitor visa with authorization to remain for a six-month period. More than a decade later, in April 2015, Kustono filed an affirmative application for asylum and withholding of removal, claiming persecution based on his Christian religion, and for CAT protection. The Department of Homeland Security served Kustono with a notice to appear in removal proceedings, charging that, after his admission as a nonimmigrant, he had remained in the United States for a time longer than permitted. *See* 8 U.S.C. § 1227(a)(1)(B). In written pleadings, Kustono admitted the factual allegations set forth in the notice to appear and conceded removability as charged.

In his declaration and testimony supporting his application, Kustono asserted that he was unwilling to return to Indonesia because he suffered mistreatment by Muslims there. Kustono, who has been a practicing Catholic all his life, testified that Muslims mocked and looked down on him for his Christianity.

According to Kustono, when he was young, Muslims identified him as Catholic because he wore a school uniform with his non-Muslim name on it. While Kustono and his brother were once walking home from school, a group of Muslims called them "kafir"—"an unholy person"— and attempted to attack them, but they escaped by running home to their parents. In the early 1980s, when Kustono was around 11 years old, a group of Muslims approached him on public transportation, and one of them punched him in the eye. The group laughed at him and then left. He recalled that his eye hurt and that he experienced blurred vision and dizziness. Kustono went to his parents, who took him to a nearby clinic.

Kustono also testified that, in November 1998, there was "a riot" during which Muslims attempted to attack a church where he was praying. As Kustono escaped, he was hit by a metal object, which injured his arm. Kustono went to a nearby pharmacy for bandages to stop the bleeding and suffered "a little bit of fever" and scarring from the injury.

Kustono testified that he did not personally experience any other problems in Indonesia. In his declaration, however, he asserted that his Muslim colleagues at work harassed and discriminated against him, that Muslims threw stones at his home, and that his car was vandalized on several occasions. Kustono further testified about an incident in February 2004 when Muslims attacked a member of his parents' Bible study group, but he could not recall any other problems encountered by his family or friends in Indonesia.

After the hearing, the immigration judge (IJ) issued a decision denying Kustono's application for asylum, withholding of removal, and CAT protection and ordering his removal to Indonesia. The IJ first found that Kustono was credible and that he had provided sufficient corroboration of his Christian religion. The IJ next determined that Kustono had failed to file his asylum application within the one-year filing deadline and had failed to do so within a reasonable time following any allegedly changed circumstances in Indonesia. *See* 8 U.S.C. § 1158(a)(2)(B), (D). The IJ noted that Kustono cited a spike in discrimination and violence by Muslims against Christians, but that spike had occurred "more than a decade" before he filed his application. As for his application for withholding of removal, the IJ found that Kustono had failed to establish past persecution on account of his religion by actors the Indonesian government was unable or unwilling to control. The IJ went on to determine that Kustono had failed to demonstrate a clear probability of future persecution in Indonesia on account of his religion, finding that he had failed to establish an objectively reasonable fear of persecution, a pattern or practice of persecution against Christians, or persecution on account of a protected ground. Also, according to the IJ, Kustono had failed to show that relocating to another part of Indonesia to avoid future persecution would be unreasonable. Finally, the IJ determined that Kustono had failed to demonstrate that he would more likely than not be tortured if he returned to Indonesia or that the Indonesian government would acquiesce in his torture, and thus he was not entitled to protection under CAT.

Kustono appealed the IJ's decision to the BIA. Dismissing Kustono's appeal, the BIA adopted and affirmed the IJ's decision. The BIA wrote separately to note that the IJ had cited *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), which had since been vacated by *Matter of A-B-*, 28 I. & N. Dec. 307 (A.G. 2021). The BIA concluded that Kustono had failed to show that the vacatur of the cited decision affected the outcome of his case.

This timely petition for review followed. "Where the Board adopts the IJ's decision and supplements that decision with its own comments, as in this case, we review both the BIA's and the IJ's opinions." *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011). We review the agency's factual findings for substantial evidence, reversing only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

**Asylum**

The IJ denied Kustono's asylum application as time-barred. An applicant for asylum must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the [applicant's] arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). If the applicant fails to file his application within the one-year filing deadline, the application may nonetheless be considered if the applicant demonstrates "the existence of changed circumstances which materially affect the applicant's eligibility for asylum." *Id*. § 1158(a)(2)(D). As relevant here, "changed circumstances" may include "[c]hanges in conditions in the applicant's country of nationality." 8 C.F.R. § 1208.4(a)(4)(i)(A). "The applicant shall file an asylum application within a reasonable period given those 'changed circumstances.'" *Id*. § 1208.4(a)(4)(ii).

The government contends that we lack jurisdiction to review the IJ's denial of Kustono's asylum application as untimely. We lack jurisdiction to review determinations regarding the one-year filing deadline for asylum applications but retain jurisdiction to review such determinations when the applicant raises constitutional claims or questions of law, including "the application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla v. Barr*, 589 U.S. __, 140 S. Ct. 1062, 1067 (2020); *see* 8 U.S.C. §§ 1158(a)(3), 1252(a)(2)(D).

Kustono argues that the IJ applied an overly restrictive standard to assess whether he had demonstrated changed circumstances warranting an exception to the one-year filing deadline and that other circuits have found worsened conditions for Christians in Indonesia. We need not decide whether we have jurisdiction to address these claims because, regardless, Kustono fails to address the IJ's ultimate ruling that he did not file his asylum application within a reasonable period following any allegedly changed circumstances in Indonesia. *See* Admin. R. at 77 ("The Court acknowledges the fluidity of country conditions within Indonesia in recent years, but the respondent has not demonstrated that he took the appropriate steps to file for asylum within a reasonable period based on any alleged changes within Indonesia. The respondent testified that he was not sure why he waited to file for asylum in 2015, stating that he was trying to take his time to decide about his future."). He thus has forfeited review of the denial of his asylum application by failing to address this dispositive issue in his brief. *See Amezola-Garcia v. Lynch*, 846 F.3d 135, 139 n.1 (6th Cir. 2016); *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005).

And even if Kustono's asylum application were considered, his application would fail for the same reasons that his application for withholding of removal fails. For the reasons discussed below, Kustono cannot establish past persecution or a "well-founded fear" of future persecution on account of his Christian religion. *See Bonilla-Morales*, 607 F.3d 1132, 1136 (6th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)).

**Withholding of Removal**

To qualify for withholding of removal, Kustono was required to demonstrate a clear probability that, if removed to Indonesia, his "life or freedom would be threatened in that country because of" his Christian religion. 8 U.S.C. § 1231(b)(3)(A); *see Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015). If an applicant for withholding of removal "is determined to have

suffered past persecution in the proposed country of removal on account of" a protected ground, "it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i).

The record does not compel the conclusion that Kustono suffered past mistreatment rising to the level of persecution. "Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (cleaned up). "'Persecution' entails 'punishment or the infliction of suffering or harm,' but 'harassment or discrimination without more does not rise to the level of persecution.'" *Id.* (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389-90 (6th Cir. 1998)). "Types of actions that might cross the line from harassment to persecution include: detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam) (quoting *De Leon v. INS*, 99 F. App'x 597, 598 (6th Cir. 2004)).

Kustono testified that he was physically harmed by Muslims in Indonesia on two occasions over a 20-year period—he was punched in the eye in the early 1980s and was hit with a metal object in 1998. Kustono otherwise complained about verbal harassment, discrimination at work, and vandalism. The IJ found that these incidents, considered in the aggregate, failed to establish harm rising to the level of persecution. Substantial evidence supports the IJ's finding.

The IJ also found that Kustono had failed to show that the Indonesian government was unable or unwilling to control his alleged persecutors. Because Kustono claimed persecution by non-governmental actors, he had the burden to show that the Indonesian government was unable or unwilling to control his alleged persecutors and protect him. *See K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019); *Khalili*, 557 F.3d at 436. In determining "whether a government was unable

or unwilling to control a private criminal," the agency "must consider the totality of the circumstances," including "both specific evidence about the government's response to the crimes inflicted on an immigrant and general evidence about a country's ability to deter those crimes." *Palucho v. Garland*, 49 F.4th 532, 536 (6th Cir. 2022).

Kustono testified that, when he was punched in the eye, his parents went to the police, who "didn't do anything." Kustono also testified that, during the riot, he showed his injury to the police, who "didn't [do] anything." The IJ found that general inaction by the police was insufficient to establish that the Indonesian government was unable or unwilling to control Kustono's alleged persecutors, who were unknown assailants. The IJ pointed out that the country-conditions evidence showed an active approach by the Indonesian government to protect Christians, including prosecuting persons who supported violence against religious minorities and providing protection for Christian churches during services. In light of the country-conditions evidence demonstrating that the Indonesian government had taken steps to protect Christians, the IJ reasonably determined that Kustono had failed to satisfy his burden to establish the government's inability or unwillingness to control his alleged persecutors. *See id*. at 536–37.

Because Kustono failed to establish past persecution, he was not entitled to a presumption that his life or freedom would be threatened in the future in Indonesia on account of his religion and was instead required to demonstrate that it was more likely than not that he would be persecuted on account of his religion upon his removal to Indonesia. *See* 8 C.F.R. § 1208.16(b)(1)(i), (b)(2). Kustono testified that his siblings, who are also Christians, have remained in Indonesia but have not told him about any harm that they have faced since he left the country in 2004. "When the petitioner's family members are also members of his . . . protected group, the reasonableness of the petitioner's claim of future persecution is undermined when the

petitioner's family members remain in the country of removal unharmed." *Amezola-Garcia*, 846 F.3d at 142. The IJ acknowledged the prevalent discrimination and isolated violence against religious minorities in Indonesia. But Kustono was required to "demonstrate more than the existence of a generalized or random possibility of persecution in his native country" to qualify for withholding of removal. *Castellano-Chacon v. INS*, 341 F.3d 533, 550 (6th Cir. 2003), abrogated on other grounds by *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747–48 (6th Cir. 2006). Substantial evidence supports the IJ's finding that Kustono had failed to demonstrate that it was more likely than not that he would be persecuted in the future by Muslims in Indonesia.

Substantial evidence also supports the IJ's finding that Kustono had failed to demonstrate that relocation within Indonesia was unreasonable. An applicant for withholding of removal "cannot demonstrate that his . . . life or freedom would be threatened if the" IJ "finds that the applicant could avoid a future threat to his . . . life or freedom by relocating to another part of the proposed country of removal and, under all the circumstances, it would be reasonable to expect the applicant to do so." 8 C.F.R. § 1208.16(b)(2). Kustono merely asserted that he could not relocate because "Muslim people live everywhere in every part in Indonesia." But as the IJ pointed out, there are predominantly Christian provinces in Indonesia, and Kustono failed to explain why he could not move to one of those provinces.

For these reasons, the record does not compel the conclusion that Kustono is eligible for withholding of removal.

**CAT Protection**

Finally, the IJ addressed Kustono's eligibility for CAT protection. To qualify for CAT protection, Kustono was required to show that he would more likely than not be subjected to torture if removed to Indonesia. *See Ramaj v. Gonzales*, 466 F.3d 520, 532 (6th Cir. 2006) (citing 8 C.F.R.

§ 1208.16(c)(2)). "Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Zaldana Menijar*, 812 F.3d at 501 (cleaned up).

The IJ acknowledged that Muslim extremists used violence to terrorize religious minorities but pointed out that the Indonesian government had taken affirmative steps to combat violence against religious minorities. In light of the country-conditions evidence demonstrating that the Indonesian government had attempted to protect religious minorities, the IJ reasonably determined that Kustono had failed to establish that the Indonesian government would acquiesce in his torture. *Id.* at 502. The IJ also determined that Kustono had failed to present sufficient evidence that he would more likely than not be subjected to torture if he returned to Indonesia. The record does not compel a contrary conclusion given that Kustono failed to "establish a *particularized* threat of torture." *Bi Xia Qu v. Holder*, 618 F.3d 602, 610 (6th Cir. 2010) (quoting *Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010)). Substantial evidence supports the IJ's denial of CAT protection.

For these reasons, we **DENY** Kustono's petition for review.