NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0242n.06

Case No. 16-4005

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 28, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GURPREET SINGH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFF B. SESSIONS, U.S. Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | |

BEFORE: GIBBONS, SUTTON, and COOK, Circuit Judges.

COOK, Circuit Judge.  Petitioner Gurpreet Singh entered the United States without authorization and filed applications for asylum, withholding of removal, and protection under the Convention Against Torture.  His right to relief hinged on his credibility: did his account of being beaten by Indian police establish a well-founded fear of persecution?  An immigration judge (IJ) found Singh not credible, denied relief on that basis, and the Board of Immigration Appeals (BIA) affirmed.  Because substantial evidence supports the IJ's credibility determination, we DENY Singh's petition for review.

I.

Singh is a citizen and native of India and member of the Sikh faith.  In July 2010, he flew to Canada before entering the United States without authorization.  A few months later, the

Department of Homeland Security initiated removal proceedings against him. Although Singh admitted removability, he fought deportation by filing an application for asylum, withholding of removal, and protection under the Convention Against Torture. An IJ scheduled a hearing and accepted documentary evidence in support of Singh's application.

At the hearing, Singh testified that he belongs to the political organization Shiromani Akali Dal Amritsar ("Amritsar"), which advocates for Sikhs' political rights and the creation of an independent Sikh state in India's Punjab province. Singh joined the party in March 2009 and was tasked with recruiting other Sikhs to join. Singh recalled three incidents where police arrested and beat him for speaking at Amritsar rallies.

According to Singh, police first arrested him in December 2009 and beat him repeatedly with wooden sticks for four days. A local doctor named Kakkar secured Singh's release by bribing police. Although police warned Singh to cease advocating for Amritsar, he returned to recruiting Sikhs and was arrested again in April and June 2010. He testified that police beat him, salted his wounds, and withheld food and water. Upon his release, a local doctor named Sood provided medical treatment at Singh's home. Singh claims that police threatened to kill him if he continued advocating for Sikh rights, prompting his decision to flee India.

Singh submitted documentary evidence to corroborate his testimony, but the IJ concluded that the majority of it actually impeached his credibility. Most significantly, whereas Singh asserted that Dr. Sood provided medical treatment at Singh's home, the record includes a note from Dr. Kakkar—written on hospital letterhead—describing Singh's injuries and explaining that he was "admitted" during the exact dates he claims to have been in police custody. Singh attributed Dr. Kakkar's use of the word "admitted" to "mistake."

Singh also submitted a letter from Amritsar's leader attesting to Singh's party membership. The letter is signed and notarized March 2009—16 months before Singh claims he came to the United States—yet lists Singh's Ohio address on the first page. Singh offered shifting explanations when asked to account for this discrepancy. He first claimed that Amritsar provided a letter with a blank address and sent an updated first page once he moved to Ohio. He later testified that the original letter included his Indian address, which he updated upon arriving in the United States.

Finally, Singh submitted letters from friends and family that purportedly corroborate his membership in Amritsar and the beatings he suffered in police custody. As the IJ noted, most of the letters were notarized by the same notary on the same date and are "identical despite having different authors." And most "merely report third-hand information." Because of her concern about the "independent authorship of these letters," the IJ assigned them little evidentiary weight.

After considering Singh's testimony and supporting evidence, the IJ concluded that he "failed to meet his burden to prove eligibility for any of the forms of relief sought, as the only evidence he presented was his incredible testimony . . . and weak documentary evidence." The BIA affirmed in a brief order substantially adopting the IJ's reasoning. Singh petitions for review.

## II.

"Where the [BIA] adopts the IJ's decision and supplements that decision with its own comments, as in this case, we review both the BIA's and the IJ's opinions." *Hachem v. Holder*, 656 F.3d 430, 434 (6th Cir. 2011) (citing *Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005) (per curiam)). In doing so, we review findings of fact, including adverse credibility determinations, under the substantial-evidence standard. *Singh v. Ashcroft*, 398 F.3d 396, 400,

402 (6th Cir. 2005). Under this highly deferential standard, we will affirm the IJ's findings unless "the evidence not only supports a contrary conclusion, but indeed *compels it*." *Hassan v. Holder*, 604 F.3d 915, 925 (6th Cir. 2010) (internal quotation mark omitted) (quoting *Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004)).

III.

**(A) Refugee Framework**

Immigration law offers three primary forms of relief to aliens who fear persecution in their home countries: asylum under 8 U.S.C. § 1158, withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and withholding of removal under the United Nations Convention Against Torture ("CAT"), 8 C.F.R. §§ 208.16–18. *Marouf v. Lynch*, 811 F.3d 174, 178–79 (6th Cir. 2016). Singh applied for relief under all three.

The Attorney General's decision to grant asylum is discretionary and requires Singh to demonstrate that he is "unable or unwilling to return to his home country 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (quoting 8 U.S.C. § 1101(a)(42)(A)). In contrast, withholding of removal under the INA and CAT is mandatory if Singh satisfies their more stringent requirements. *Id.* at 951. To qualify for withholding of removal under the INA, Singh must show a "clear probability that his life or freedom would be threatened in the country directed for removal on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Zhao v. Holder*, 569 F.3d 238, 245 (6th Cir. 2009) (citing *INS v. Stevic*, 467 U.S. 407 (1984)). To warrant protection under the CAT, he must establish "that it is more likely than not that he [or she] would be tortured if removed to the proposed country of removal." *Pilica*, 388 F.3d at 951

(quoting 8 C.F.R. § 208.16(c)(2)). Because the burdens of proof for withholding of removal under the INA and CAT are higher than the burden for asylum, an applicant's failure to establish a well-founded fear of persecution generally forecloses relief under all three. *See Mohammed v. Keisler*, 507 F.3d 369, 372 (6th Cir. 2007).

**(B) Singh's Application**

To establish a well-founded fear of persecution, Singh leaned heavily on his own account of being beaten by Indian police. The IJ concluded, and the BIA agreed, that Singh was not a credible witness and therefore failed to establish his eligibility for asylum or withholding of removal. *See id.* On appeal, Singh argues that the BIA erred in affirming the IJ's adverse-credibility determination. Because the record does not compel the conclusion that Singh testified credibly, we deny his petition for review. *See Hassan*, 604 F.3d at 925.

"An adverse credibility determination is fatal to claims for asylum" when the applicant relies principally on his own testimony. *Slyusar v. Holder*, 740 F.3d 1068, 1072 (6th Cir. 2014) (citation omitted). And in evaluating witness credibility, IJs possess wide latitude. Before 2005, only inconsistencies that went to the "heart of the applicant's claim" warranted an adverse-credibility finding. *See Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Congress discarded the heart-of-the-claim rule in 2005 by passing the REAL ID Act. IJs may now consider "the totality of the circumstances," including any inconsistency, inaccuracy, or falsehood in the record "without regard to whether [it] goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii).

Here, the IJ compared Singh's testimony to the documentary evidence and found several inconsistencies that cast doubt on his credibility. We find two particularly probative and sufficient to support the IJ's adverse-credibility determination.

*First*, the IJ relied on the discrepancy between Singh's story and Dr. Kakkar's note. Singh recalled the exact dates he was in police custody and averred that he received at-home medical treatment from Dr. Sood, not Dr. Kakkar. Yet Dr. Kakkar's note says Singh was "admitted" during those dates. Although Singh attributed Dr. Kakkar's use of "admitted" to mere mistake, Kakkar drafted the note on his hospital's letterhead and described Singh's injuries—contextual clues casting doubt on Singh's explanation.

*Second*, Singh's testimony conflicts with the letter from Amritsar's leader vouching for Singh's membership in the organization. The letter is notarized March 2009—when Singh claims he lived in India—yet lists his Ohio address. The BIA described Singh's explanation for this discrepancy as "implausible and inconsistent," and indeed it was. Singh first claimed that the letter originally had no address on it, before claiming that it included his Indian address.

Under the REAL ID Act, these two inconsistencies—coupled with Singh's failure to offer convincing explanations—entitled the IJ to reject his testimony. *See, e.g.*, *Singh v. Holder*, 562 F. App'x 493, 497 (6th Cir. 2014). Accordingly, Singh could not demonstrate the well-founded fear of persecution necessary for asylum, and "it follows that he could not satisfy the more stringent burdens of proof required for his withholding-of-removal and CAT claims." *Singh v. Yates*, Nos. 15-4332, 16-3585, 2017 WL 385779, at *5 (6th Cir. Jan. 26, 2017) (citing *Keisler*, 507 F.3d at 372).

In his petition, Singh criticizes the IJ for focusing on what he characterizes as trifling inconsistencies, pointing out that IJs should not "'cherry pick' facts or inconsistencies to support an adverse credibility finding that is unsupported by the record as a whole." *Marouf*, 811 F.3d at 182 (quoting *Ilunga v. Holder*, 777 F.3d 199, 207 (4th Cir. 2015)). Although we agree that some inconsistencies identified by the IJ and BIA border on trivial or were adequately explained by

Singh,[1] the two discussed above find record support and undercut the crux of Singh's persecution claim. Accordingly, although some of Singh's critiques have merit, none warrant reversal.

Singh also blames language barriers and cultural differences for these inconsistencies. In particular, he claims it was "entirely reasonable and very plausible" that Dr. Kakkar used "admitted" to refer to his dates of incarceration. But the question before us is not whether the IJ *could* have construed the facts in Singh's favor, but whether any reasonable factfinder would be *compelled* to do so. *Hassan*, 604 F.3d at 925. As explained above, substantial evidence supports the IJ's rejection of Singh's explanation.

In sum, because the IJ's conclusion that Singh's testimony lacked credibility is adequately supported and precludes relief, we DENY his petition for review.

---

[1] For example, the IJ and BIA found an inconsistency regarding the duration of Dr. Sood's treatment of Singh. According to the BIA, Singh testified that Dr. Sood treated him for one month following the December and April police encounters, whereas a letter from Dr. Sood reflects only one week of treatment after those incidents. But Singh clearly explained that Dr. Sood treated him "continuously" for one week, followed by intermittent visits for the rest of the month just to "check if I'm doing fine." We discern little, if any, inconsistency between the descriptions of Singh's treatment with Dr. Sood.