NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0458n.06

No. 16-3954 & 16-4690

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 07, 2017
DEBORAH S. HUNT, Clerk

MOHAMMED AHMED ALI,                    )
                                       )
        Petitioner,                    )
                                       )
v.                                     )        On Petition for Review
                                       )        from the United States Board
JEFFERSON B. SESSIONS, III, U.S.       )        of Immigration Appeals
Attorney General; DEPARTMENT OF        )
HOMELAND SECURITY,                     )
                                       )
        Respondents.                   )

_____/

Before: GUY, ROGERS, and KETHLEDGE, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** Mohammed Ahmed Ali, a native and citizen of Somalia, petitions for review of two orders of the Board of Immigration Appeals (BIA). He challenges the BIA's dismissal of his appeal from the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Ali also seeks review of the BIA's denial of his motion to reconsider or reopen the proceedings. The petitions for review are denied.

**I.**

Ali was detained on November 16, 2015, when he entered the United States with a fake passport in another name and no other identification. When questioned at the time of entry, Ali reported that he was 28 years old, had completed college in Sudan, and was a Sunni Muslim born in Barawe, Somalia. Ali said he was married to a Somali woman, but had fled Somalia because

he had sexual intercourse with a male friend whose family threatened to kill Ali when they found out. Ali said that was the first time he had sexual relations with another man, denied that he was gay, and said he "liked" both men and women. Ali identified the man he slept with as Noor Amed.

An asylum officer conducted a credible fear interview two months later. Ali said he was not gay, explaining that his sexual encounter with Noor was also his first experience with alcohol and that he did not know what he was doing. Ali reported that a friend brought the alcohol to him, he became intoxicated, and then a man who was known to be gay came over to his house, seduced him, and spent the night. People saw Noor leave the house in the morning and told both of their families. Then their families got together, spoke to elders and religious leaders, and decided that Ali would be killed because he was married and had sex with another man in violation of their Islamic faith. But, Ali's mother and sister did not agree and helped him leave the country. Ali said he heard that members of Al-Shabaab had asked about him after he left Somalia. Ali also said he did not know what happened to Noor.

Removal proceedings were initiated shortly thereafter. Ali conceded removability, but filed an application for asylum, withholding of removal, and protection under the CAT. The application was grounded in Ali's claim that he feared that he would be killed or tortured if he were forced to return to Somalia because he is a homosexual who was married and had sex with another man. Explaining his fear, the application stated: "If I go back I can be stoned to death, as they have done to other gay youth and to the man I was having a relationship with."

A merits hearing was conducted before an Immigration Judge (IJ) on April 6, 2016. Ali was the only witness and testified through an interpreter (although he acknowledged that he also understood English). Ali testified that he was born on January 1, 1987, in Barawe, Somalia;

received an engineering degree in Sudan, but never found work; and was in an arranged marriage for two years, but divorced his wife over the telephone shortly before entering the United States. Ali offered no identification or other corroboration. Ali stated that he came to the United States because he wanted to be in a country where he could be free to live openly as a homosexual.

Ali testified that he realized he was attracted to men while in high school in 2005, but did not tell anyone about those feelings or have sexual relations with another man until one night when his wife was away in June 2015. Ali said he kept his homosexuality a secret because he was afraid of the consequences. When asked why he had denied being gay when interviewed by the border patrol agent and the asylum officer, Ali explained that he did not want to be "labeled" that way and that he "liked" both men and women. Later, Ali added that he had sex with Noor because he was intoxicated and had no sense of what he was doing.[1]

Ali testified that on that night in June 2015, Noor came to his house with alcohol and they drank, had sex, and spent the night together. Ali testified that an old lady saw Noor leave in the morning, and that when Noor got home and was questioned by his family he told them Ali had forced him to have sex. Asked again later how they were discovered, Ali said that some people saw Noor leave in the morning and questioned him about staying overnight in the home of a married man until he confessed that they had been intimate. When confronted with this inconsistency, Ali said he was not present when Noor was seen and had been "told different things." When the discrepancy about who had brought the alcohol was noted, Ali said his testimony had been mistaken and that another friend had actually brought the alcohol to him before Noor came over.

---

[1] Ali said he communicated with some homosexuals over the internet and had some friends who were rumored to be gay in Somalia, but did not confide in any of them that he was gay.

Ali said he received more than 100 threatening telephone calls before he changed his number. He added that Noor's family was angry, swore to kill him, and came looking for him. Then the two families came together and decided he should be killed, but Ali's mother hid him in other relatives' homes and arranged for him to leave Somalia. Ali said he heard that Noor's family had helped him leave Somalia right after the incident. When asked why his application stated that the man he had a relationship with had been stoned to death, Ali said he must have been misunderstood and had meant only to say that another gay youth had been stoned to death three years earlier. Ali explained that he must have missed the mistake, although he reviewed the application with counsel and confirmed on the record that no changes were necessary before signing it under oath.

Although Ali was not harmed in the past, he believed that he could not be safe anywhere in Somalia because homosexuality is forbidden by Islam and may be punishable by death under Shariah law. Ali said he feared that he would be killed by his family, his tribe, or Al-Shabaab, and added that he believed the government would have turned his case over to the religious leaders or Al-Shabaab. Notably, the 2014 Country Report for Somalia indicated that "Al-Shabaab retained control of some towns and rural areas but by year's end lost control of the port city of Barawe and several towns and villages in the south and central regions to the African Union Mission in Somalia (AMISOM) and Somali forces."

Prior to the merits hearing, Ali submitted a number of articles to show that homosexuality is taboo in Somalia, is criminalized and punishable by a term of two months to three years in prison in Somalia, and may be punishable by death under a strict interpretation of Shariah law enforced in areas of Somalia controlled by Al-Shabaab. The IJ acknowledged that those materials include multiple references to two reported cases of executions of homosexuals in

Somalia—including several references in the lengthy summary entitled "Report on the Treatment of Gay Persons in Somalia" by Ben Christman ("Christman Report").

At the conclusion of the hearing, the IJ rendered an oral decision denying Ali's application. Importantly, the record reflects that the IJ made an express finding that Ali was not credible and identified four specific inconsistencies in support of that determination. The IJ also found, in the alternative, that Ali had not alleged past persecution, had not demonstrated a well-founded fear of future persecution, and therefore also could not show that it was more likely than not that he would be persecuted on the same grounds. Finally, the IJ separately found that Ali had not met his burden to prove entitlement to relief under the CAT. Ali filed a timely appeal to the BIA.

The BIA dismissed Ali's appeal in an order entered July 20, 2016, finding no clear error in the IJ's adverse credibility determination and that, in the absence of independent corroborating evidence, he could not establish his claims. The BIA expressly declined to reach the IJ's alternative findings concerning the burdens of proof and persuasion for asylum and withholding of removal—including whether homosexuals are a cognizable social group in Somalia, whether the government seeks to persecute homosexuals or is unwilling or unable to control others who seek to persecute homosexuals, and whether Ali could safely relocate to another area within Somalia. Finally, the BIA also found no clear error in the IJ's determination that Ali failed to satisfy his burden to show that it is more likely than not that he would be subjected to torture by, at the instigation of, or with the acquiescence of a public official as required to be entitled to protection under the CAT.

Ali moved for reconsideration or to reopen the proceedings and requested that the motion be assigned to a three-member panel of the BIA. A single-member panel of the BIA denied all

of Ali's motions in an order entered on November 7, 2016. Reconsideration was denied, finding

that the arguments were the same as, or substantially similar to the arguments already raised by

Ali. The motion to reopen was denied because the evidence Ali submitted in support was

duplicative, was available and could have been submitted at the merits hearing, or did not show

*prima facie* eligibility for relief or a particularized risk of being subjected to harm or torture upon

repatriation. The petitions for review have been consolidated for decision.

## II.

Where there is a separate BIA decision, we review both it and any reasoning of the IJ that

is adopted by the BIA. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Legal conclusions

are reviewed *de novo*, while factual findings—including findings regarding credibility—are

reviewed under the substantial-evidence standard. *Id.*; *see also Zhao v. Holder*, 569 F.3d 238,

246 (6th Cir. 2009). Under the substantial-evidence standard, this court must uphold the IJ's or

BIA's findings unless the evidence compels a contrary conclusion. *Slyusar v. Holder*, 740 F.3d

1068, 1072-73 (6th Cir. 2014); *see also* 8 U.S.C. § 1252(b)(4)(B). The BIA's decision on a

motion to reconsider or to reopen is reviewed for abuse of discretion. *Alizoti v. Gonzales*,

477 F.3d 448, 451 (6th Cir. 2007). The BIA abuses its discretion when it acts arbitrarily,

irrationally, or contrary to law. *Id.*

## A.     Adverse Credibility Determination

First, seeking remand, Ali argues that it is not clear whether the BIA properly reviewed

the IJ's credibility determination for clear error (as opposed to substantial evidence). But, the

only fair reading of the BIA's orders refutes this claim. Ali latches onto the BIA's parenthetical

notation following one of several case citations, which stated that factual findings are reviewed

for substantial evidence. However, the BIA expressly identified the correct standard and

specifically concluded that "[t]here was no clear error in the IJ's adverse credibility finding." Moreover, any ambiguity was resolved when Ali raised the issue in his motion for reconsideration. The BIA's order denying reconsideration explained that "the clear error standard was cited to and applied" and added that the case in question was cited for the standard on judicial review—"not that the Board would apply a substantial evidence test."

Second, Ali insists that the BIA erred by not recognizing the IJ's decision as a finding of "partial credibility" and therefore also erred by not addressing the IJ's further findings with respect to the merits of his claims. But, this argument rests on a plain misreading and/or misstatement of the IJ's decision. In fact, the IJ opened the discussion of credibility stating: "The Court finds the respondent not credible." Then the IJ discussed four inconsistencies in Ali's testimony before concluding: "Because of the above, the Court finds that respondent is not a credible witness." The record belies Ali's claim that the IJ implicitly accepted Ali's testimony that he is gay and/or had sex with another man. Nor does Ali's partial credibility argument find support in the fact that the IJ proceeded to discuss the merits of the asylum and withholding claims for "six more pages" given that those findings were explicitly made in the alternative to the adverse credibility determination.

Third, the IJ's adverse credibility determination is governed by the REAL ID Act. *Slyusar*, 740 F.3d at 1072. Under the REAL ID Act, the IJ may consider "the totality of the circumstances," including any inconsistency, inaccuracy, or falsehood in the record "without regard to whether [it] goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). Also, when it is reasonable to expect corroborating evidence of specific facts, such evidence should be provided. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004). This court has recognized that an adverse credibility determination is generally fatal to an applicant's claims

when he relies principally on his own testimony. *Slyusar*, 740 F.3d at 1072; *see also Singh v. Sessions*, __ F. App'x __, No. 16-4005, 2017 WL 1531634, at *3 (6th Cir. Apr. 28, 2017). Again, we review the IJ's credibility determination, as supplemented by the BIA, for substantial evidence.

Four inconsistencies in Ali's oral and written statements were identified: (1) whether Noor was stoned to death or left Somalia; (2) who brought the alcohol to Ali on the night that he got drunk and slept with Noor; (3) whether their intimate activity became known because Noor was seen leaving by an old lady who told their families or because Noor was confronted as he left by people who questioned him until he confessed; and (4) whether Ali only feared Noor's family or also feared his own family, tribe, religious leaders, and/or Al-Shabaab. The BIA considered the totality of the circumstances, including the explanations Ali gave for the discrepancies, before concluding that the IJ did not clearly err in finding that Ali was not a credible witness. Ali did not argue that the adverse credibility determination was not supported by substantial evidence. Even if he had, we could not conclude that the record compels a contrary conclusion.

Taking a different tack, Ali argues that one can qualify for relief notwithstanding an adverse credibility determination if there is independent evidence in the record sufficient to meet the relevant burdens of proof. *See Yao Shi v. Holder*, 530 F. App'x 557, 559 (6th Cir. 2013); *Vakeesan v. Holder*, 343 F. App'x 117, 125 (6th Cir. 2009). However, the BIA expressly found that Ali could not meet the burdens of proof necessary to establish eligibility for asylum or withholding of removal because "independent corroborating evidence has not been submitted that could serve to establish [Ali]'s claim apart from his discredited testimony." It is not clear what independent evidence Ali claims the BIA overlooked.

Nor does Ali's reliance on *Vakeesan* advance his cause. Notably, the court specifically rejected a "partial credibility" argument similar to the one made by Ali. 343 F. App'x at 124-25. The court explained that the adverse credibility ruling as to past persecution—which was made under the pre-REAL ID Act standards—would not bar an asylum claim based on future persecution as long as the factual predicate was independent of the discredited testimony. *Id*. at 125. But, Vakeesan's claim failed because the factual predicate was not independent. *Id*. at 125-26. Here, Ali's discredited testimony provided the only factual predicate for the claim that he is a homosexual. Thus, Ali could not prevail on a claim of "pattern or practice" of persecution because the adverse credibility determination prevents him from establishing his inclusion in, and identification with, homosexuals in Somalia. *Id.* at 126; *cf. Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015) (noting no dispute that petitioner was a Chaldean Christian).

Ali has not shown that the BIA erred. Moreover, this court could not review the IJ's alternative findings on the merits because the BIA declined to address them. *See Slyusar*, 740 F.3d at 1073 (citing *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002)).

**B.      Convention Against Torture**

Relief under the CAT is available when an applicant can show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). "Torture, in any of its myriad manifestations, must entail the intentional infliction of severe mental or physical pain upon an individual by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Bi Qing Zheng v. Lynch*, 819 F.3d 287, 294-95 (6th Cir. 2016) (quoting *Alhaj v. Holder*, 576 F.3d 533, 539 (6th Cir. 2009)). "Acquiescence of a public official requires that the public official,

prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." 8 C.F.R. § 1208.18(a)(7).

Ali relies generally on the Christman Report's conclusion that: "The death penalty is used as punishment for individuals who are 'found guilty' of engaging in consensual, same-sex relations in Somalia." But, full review of the Report shows that this refers to the strict interpretation of Shariah law that forbids homosexuality and "puts gay person at particular risk in the parts of Somalia which are still under Al-Shabaab's control." Similarly, Ali relies on news reports that Somalia is a country in which homosexuality may be punished by death. Reading more closely, however, the reports distinguish between the imposition of Shariah law in some areas of Somalia and the criminal penalties of up to three years of imprisonment for homosexual acts under the penal code in Somalia. *See, e.g.*, IJ's Exh 3, Tab B ("The penal code stipulates prison, but in some southern regions, Islamic courts have imposed Shariah law and the death penalty.") Nor does the evidence regarding the reported executions of homosexuals make any assertion of official instigation, consent, or acquiescence. Finally, although the Christman Report concludes that prison conditions in Somalia are inhumane, Ali does not dispute that substandard jail conditions do not constitute torture for purposes of the CAT.

The BIA found that Ali had not established that it was more likely than not he would be subjected to torture if returned to Somalia, and the record does not compel a contrary conclusion.

## C.     Motion for Reconsideration or to Reopen

The purpose of a motion to reconsider is not to present new evidence, but to provide an opportunity to argue that the IJ or BIA erred as a matter of law or fact. *Alizoti*, 477 F.3d at 452. As discussed, Ali argued that the BIA applied the wrong standard of review, misread the IJ's

credibility finding, and erred in finding that Ali was not a partially credible witness. The BIA did not abuse its discretion in finding no error required reconsideration.

Ali's motion also sought to reopen the proceedings on the grounds of changed country conditions and relied on Exhibits A-L. Reopening will not be granted unless it is supported by material evidence that was not available and could not have been discovered or presented at the merits hearing. 8 C.F.R. § 1003.2(c)(1). The BIA recognized that the exhibits included a new signed statement from Ali, but did not abuse its discretion in finding that it "merely reiterates his fear of returning to Somalia." The handwritten letter did not offer any evidence that would support reopening.

Next, Ali argues that the BIA failed to explain why it rejected the conclusions of the Christman Report, which was provided as a supplement to the motion to reconsider or reopen. But, this is the same report that was submitted to the IJ prior to the merits hearing. The BIA explained that the majority of the evidence submitted in support of reopening was duplicative or could have been presented at the merits hearing (and specifically cited to Exhibits C, E, H, I, J, K and L). This is confirmed by the record. Although Ali faults the BIA for not mentioning Exhibits D, F, or G, the BIA is not required to mention every piece of evidence as long as it explains the basis on which it decided the motion. *Zhang v. Mukasey*, 543 F.3d 851, 854 (6th Cir. 2008). Moreover, review of the record confirms that the information in Exhibits D, F, and G, was duplicative of the evidence that was before the IJ.

Finally, a *prima facie* showing of eligibility for relief is required before a motion to reopen will be granted. *Alizoti*, 477 F.3d at 451-52. The BIA did not abuse its discretion in finding that Ali's additional evidence did not establish *prima facie* eligibility for relief or that he has a particularized risk of being subjected to harm or torture if returned to Somalia.

**D.      Motion for Three-Member Panel**

Ali contends that the BIA erred by refusing to assign his motion for reconsideration or reopening to a three-member panel.  The BIA's decision whether to refer such a motion to a three-member panel is governed by 8 C.F.R. § 1003.2(i) and § 1003.1(e)(6).  In pertinent part, § 1003.2(i) provides, in part, that:

> Any motion for reconsideration or reopening of a decision issued by a single Board member will be referred to the screening panel for disposition by a single Board member, unless the screening panel member determines, in the exercise of judgment, that the motion for reconsideration or reopening should be assigned to a three-member panel under the standards of § 1003.1(e)(6).

In turn, § 1003.1(e)(6)'s streamlining provisions provide, in relevant part, that cases "may only be assigned for review by a three-member panel if the case presents one of [six] circumstances"—including:

> (iii) The need to review a decision by an immigration judge or the Service that is not in conformity with the law or with applicable precedents; [or]
>
>          . . .
>
> (v) The need to review a clearly erroneous factual determination by an immigration judge[.]

Other circuits have divided on the question of whether the BIA's assignment decisions under § 1003.1(e)(6) are subject to judicial review, and this circuit has repeatedly found it unnecessary to decide the issue.  *Amezola-Garcia v. Lynch*, 846 F.3d 135, 140 n.2 (6th Cir. 2016); *Lopez-Salgado v. Lynch*, 618 F. App'x 828, 833-34 (6th Cir. 2015); *see also Djokic v. Sessions*, __ F. App'x __, Nos. 15-4313/16-3207, 2017 WL 1066571, at *6 (6th Cir. Mar. 21, 2017) (motion to reconsider/reopen).

Ali argues that the BIA had no discretion with respect to the assignment of his motion to reconsider or reopen to a three-member panel because the regulation's use of the phrase "in the

exercise of judgment" in § 1003.2(i) overrides whatever discretion is arguably afforded by the incorporated standards of § 1003.1(e)(6). We are not persuaded, however, that the different language alters the discretionary nature of the assignment decision. This court has said that assignment of an appeal to a three-member panel is not mandatory; the same should be true with respect to the assignment of a motion to reconsider or reopen to a three-member panel. *Amezola-Garcia*, 846 F.3d at 141 ("Even when one or more of the circumstances [listed in § 1003.1(e)(6)] are present, the BIA may assign that case to a single-member panel.") (citing *Koussan v. Holder*, 556 F.3d 403, 415 (6th Cir. 2009), *abrogated on other grounds by Judulang v. Holder*, 565 U.S. 42 (2011)). Even so, we decline to decide whether the BIA's assignment decision is subject to judicial review because Ali's arguments in that regard are without merit. *Id*. at 140 n.2 (explaining that assuming reviewability is not an improper exercise of hypothetical jurisdiction).[2] Specifically, as we have already concluded, the BIA applied the correct standard in reviewing the adverse credibility determination consistent with the law and applicable precedents; the BIA's factual findings are supported by substantial evidence; and the BIA did not abuse its discretion in denying reconsideration or reopening.

*        *        *

The petitions for review are **DENIED**.

---

[2]Although the Attorney General appears to rely on 8 U.S.C. § 1252(a)(2)(B)(ii) to assert that this court lacks jurisdiction to review the BIA's decision not to assign the motion to a three-member panel, that jurisdiction-stripping provision does not apply to determinations made discretionary by regulation. *Kucana v. Holder,* 558 U.S. 233, 245-47 (2010).